# Burrill *versus* The Dollar Savings Bank.

Among the rules of a savings bank was the following: "If any person shall present a deposit book at the office of this corporation, and allege himself or herself, untruly, to be the depositor named therein, and shall thereby obtain from the officers of this corporation the amount deposited, or any part thereof, and the actual depositor shall not have given previous notice at the office of his or her book having been lost or taken from him or her, this corporation will not be responsible for the loss so sustained by any depositor, neither will this institution be liable to make good the same. Provided, that such payment has been entered in the book of the depositor at the time when made." The book of a depositor was temporarily abstracted from his trunk and certain moneys drawn from the bank without the knowledge of the depositor. He afterwards brought suit for the amount, and it was alleged that the above rule relieved the bank from liability. *Held*, that the rule of the bank was reasonable and necessary for its safety, and that plaintiff could not recover. *Held, further*, that the fact that plaintiff was illiterate and could not read the rules in the bank book delivered to him, made no difference.

[Burrill *v.* Dollar Savings Bank.]

November 13th 1879.  Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas No. 2, of *Allegheny county:* Of October and November Term 1879, No. 323.

Assumpsit by Samuel Burrill against the Dollar Savings Bank, to recover the amount of a deposit.

Plaintiff was a colored man, who, at the time he opened his account with the bank in 1868, could neither read nor write. When he opened the account, he made his mark on the signature book of the bank; but subsequently having learned to read and write he, in 1876, signed the book with his own hand.   The rules and regulations of the bank were printed on the back of the bank book, which was received by plaintiff, the first of which was as follows:

" Sect. 1. Every person desirous of becoming a depositor shall, at the time of making the first deposit, receive a Deposit Book containing the following Rules and Regulations printed therein; and, by receiving the book, the depositor will be considered as agreeing to be bound by the By-Laws of the Dollar Savings Bank.  One Book only will be given out in the same name."

In addition to this, the following notice and rules were printed on the page fronting the title page of the bank book:

## "TAKE CARE OF THIS BOOK.

If you lose or mislay it, give immediate notice to the Bank ; as, if it gets into improper hands, you may be defrauded.   Read the rules in the back of the book.

-----

### By-laws.

Sect. 10.—If any person shall present a deposit book at the office of this corporation, and allege himself or herself, untruly, to be the depositor named therein, and shall thereby obtain from the officers of this corporation the amount deposited, or any part thereof, and the actual depositor shall not have given previous noticce at the office, of his or her book having been lost or taken from him or her, this corporation will not be responsible for the loss so sustained by any depositor, neither will this institution be liable to make good the same.   Provided, That such payment has been entered in the book of the depositor at the time when made."

On the 7th of December 1876, the treasurer of the bank, Mr. Colton, received a letter, evidently written by a person of meagre education, signed " Samuel Burrill, No. 926 Locust street, Philadelphia,"informing him that he wished to draw $195, and asking him how he would go about it.   Mr. Colton replied by sending him a blank check, directing him to fill up and sign it, and take it to any banker in Philadelphia, who would forward it for collection. He also directed him to send his bank book with the check, or by mail, as the check would not be paid unless the book was in the

[Burrill *v.* Dollar Savings Bank.]

bank. On the 14th of December the book was received, together with a letter directing its return by mail after payment of the check, and the entry of the same in the book. On the 30th, the check was presented by the messenger of the First National Bank of Pittsburgh and was paid. An entry to that effect was made in the depositor's bank book, which was returned by mail the same day to the address indicated in the letters.

The following is a copy of the check, with its endorsements:

Open daily from 9 o'clock A. M. to 3 o'clock P. M. No Money paid without notice. Notice dates from the time the Book is left at the Bank.

No. 124 FOURTH AVENUE.

*No. of Book,* 20,366.   $195.00.

[Stamp.]

*Philadelphia, Pa.*
*Pittsburgh, December* 14, 1876.

DOLLAR SAVINGS BANK.

*Two Weeks after date,*

Pay to order of Samuel Burrell, . . . . . *or Bearer,*
One Hundred and Ninety-five, . . . . $\frac{0}{100}$ *Dollars.*

Witness:
JOHN S. BAILEY.

Sign here, First Name in Full.
SAMUEL BURRILL.

ENDORSED.

Pay to P. W. Elder & Co., or order.
SAMUEL BURRELL.

Pay to J. D. Scully, Cashier, or order,
for collection,
P. W. ELDER & Co.

J. D. Scully, Cashier,
BLAIR.

Burrill had left Pittsburgh, and was employed in Philadelphia as a waiter. His bank book had been abstracted temporarily from his trunk by some unknown person, and the money secured by personating him, and using the book as above set forth. Plaintiff did not know that his book had been taken, until he applied for the money, when he was informed that the above amount had been drawn. When he was notified of the charge by the clerk at the bank he disputed it, denied all knowledge of it, and demanded payment of the amount so charged, together with what the bank admitted was due to him. This the bank refused to pay, claiming that, even if the check for the $195 was a forgery, it was relieved from payment of that sum under the provisions of sect. 10 of its by-laws above quoted. Suit was therefore brought, and a verdict rendered by the jury for the full amount of plaintiff's claim, subject however, to the question of law reserved, which was substantially

[Burrill *v.* Dollar Savings Bank.]

whether or not plaintiff is concluded by the terms of sect. 10 of the by-laws, which were printed in his book.

In an opinion on this question the court, White, J., said:

"Sections 1 and 10 of article 11, of the rules and regulations of the defendant company, are reasonable and proper for the protection of the defendant company, and not unreasonable or too strict upon depositors. It is not requiring too much of them to keep their deposit books safely, and it is expressly so stipulated in the contract with them. The depositor must be presumed to know what the printed rules and regulations of his book require. If he cannot read he should inquire what they are. Common sense tells him they are there for some purpose; and common prudence would dictate that he should inquire of some one what they are, and how they may affect him. Besides, section 10 was printed by itself, in larger type on the front page, making it very prominent to the eye.

"We are, therefore, of the opinion, that the credit $195 should be allowed. Judgment is ordered to be entered for the plaintiff for $194.57 on the verdict, on payment of the verdict fee."

This action of the court was assigned for error by plaintiff, who took this writ.

*H. H. McCormick*, for plaintiff in error.—The plaintiff was guilty of no negligence. He kept his book as securely as it was possible for him to keep it. It was admitted he could not read, and his attention was not called to the provisions of the rule. Plaintiff knew nothing about these by-laws, and never assented to them, nor agreed, either expressly or impliedly, to be bound by them. It is well settled that to make a limitation binding knowledge must be brought home to the depositor: Camden & Amboy Railroad Co. *v.* Baldauf, 4 Harris 67; Verner *v.* Sweitzer, 8 Casey 208. The case of Baxendale *v.* Bennett, Law Rep., 3 Q. B. Div. 575, is cited on the question of negligence. As plaintiff did not know that his bank book was stolen, and could not therefore give notice to the bank, as required by rule 10, its terms cannot be held to apply to his case. The rule must be construed reasonably, and ought not to be held to require impossible things.

*Rodgers & Oliver*, for defendant in error.—This bank is what is known as a provident savings institution. It has no capital stock, and the profits are divided among the depositors. In 1879 it had over 12,000 depositors, and $5,000,000 of deposits. In such an institution it is impossible to recognise the face and signature of each depositor, and some rule is therefore necessary to limit the liability of the bank in case of an attempt to defraud it. In Massachusetts it has been ruled that a depositor in a savings bank, by accepting a deposit book, assented to the by-laws, and it thus became a contract between the parties, though the depositor could

[Burrill v. Dollar Savings Bank.]

neither read nor write : Goldrick *v*. Bristol Co. Savings Bank, 123 Mass. 320 ; Levy *v*. Franklin Savings Bank, 117 Id. 448.

The right of savings banks to make reasonable rules with reference to depositors was upheld by implication in the recent case of Cupps *v*. The Peoples' Savings Bank, 10 Norris 315, though it was rightly added that they must be held to a strict compliance with their own rules. The rules under consideration in that case were almost identical with rules 8 and 10. The court there says : "It cannot be pretended that Mrs. Cupps's money was paid out in conformity with any one of these by-laws. It was paid out on forged orders, and these orders were not ' properly witnessed,' as the by-laws required orders of absent depositors to be."

In this case the order was properly witnessed, and the bank officers acted in strict conformity with its by-laws.

The judgment of the Supreme Court was entered November 24th 1879,

PER CURIAM.—Savings banks like the defendant in error are really charities for the benefit of the poor. With many thousands of depositors they can only save themselves from imposition and loss by rules strictly enforced. The rule under which the defendants claim protection is a very reasonable one, and necessary for their safety. The fact that the plaintiff was illiterate, and could not read the rules in the bank book delivered to him, made no difference. He ought to have requested it to be read to him. Common prudence required this precaution. It is altogether unlike the cases of Camden and Amboy Railroad Company *v*. Baldauf, 4 Harris 67, and Verner *v*. Sweitzer, 8 Casey 208, relied on by the plaintiff in error.

Judgment affirmed.