# Bulakowski *v.* Philadelphia Saving Fund Society, Appellant.

*Banks ·and banking — Savings bank — Definition — Words and phrases.*

1. A savings bank is an institution organized to promote prosperity of persons of small means and limited opportunities, wherein earnings may be gained on aggregate small deposits, which earnings, after deducting necessary expenses, and a reserve for depositors' security, are divided among the depositors.

*Banks and banking—Savings banks—Relation between bank and depositor—Checks—Ordinary care—Burden of proof—Evidence—Rules—Pass-books.*

2. A savings bank is not held to the same high degree of care as that required of a commercial bank respecting its depositors or creditors.

3. A savings bank is liable to its depositors for want of ordinary care, as a matter of public policy.

4. A rule of a savings bank, printed in the pass-books, which provides that payment to any person presenting the pass-book shall exonerate the bank unless the depositor has given previous notice of the loss or theft of the book, is binding upon the depositor by his acceptance of the book, and exonerates the bank, unless for want of ordinary care.

5. In such case it is not material whether the depositor is able to read the English language. His duty is to make himself familiar with the rules.

6. When plaintiff shows money was deposited but not returned on proper notice, a prima facie case is made out.

7. Where payment of a check is made prior to notice of the theft of the pass-book, to a person who presented the book, signed the necessary receipts, and answered all questions pertaining to the original identification card taken two years before, the bank will be relieved from liability, if it appears, in addition, that the signature to the receipts resembled so closely that on the card, that the paying teller was justified in believing it to be genuine, and paying on account of it.

8. In such case, the burden of proof is on the depositor to show want of ordinary care. Mere proof of loss is not sufficient.

9. The fact that the depositor did not know that the book was stolen is immaterial. He must know, and to do so he must keep his book in a safe place.

Argued March 22, 1921. Appeal, No. 275, Jan. T., 1921, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1919, No. 3031, on verdict for plaintiff, in case of Andrzej Bulakowski v. Philadelphia Savings Fund Society. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit to recover the amount of a deposit in a saving fund society. Before FINLETTER, J.

The opinion of the Supreme Court states the facts.

Facsimiles of various signatures, mentioned in the opinion of the Supreme Court, are as follows:

Signature of plaintiff on opening account:

Signatures on disputed receipt:

Signature of plaintiff written four days after disputed receipt:

Signature of plaintiff to affidavit to statement of claim:

540 BULAKOWSKI *v.* PHILA. SAV. F. S., Appellant.

Verdict and judgment for plaintiff for $2,017. Defendant appealed.

*Error assigned,* among others, was refusal of judgment for defendant n. o. v., quoting record.

*W. Logan MacCoy,* of *MacCoy, Evans, Hutchinson & Lewis,* for appellant.—The rule of defendant, assented to by the plaintiff, constitutes a reasonable and enforceable contract, unless defendant acted without ordinary care.

The burden of proof was on plaintiff: Kelley v. Buffalo Savings Bank, 180 N. Y. 171.

There is no evidence that defendant acted without ordinary care: Krishkan v. New York Savings Bank, 156 N. Y. Supp. 298.

Ordinary care as established by the universal custom of savings institutions and sanctioned by the courts, consists in requiring (a) the production of the passbook, (b) a signature so closely resembling the depositor's that competent persons will honestly believe it genuine, and (c), in case of doubt regarding the signature, correct answers to the test questions.

*John N. Landberg,* for appellee.

OPINION BY MR. JUSTICE KEPHART, April 25, 1921:

A savings bank is an institution organized to promote prosperity of persons of small means and limited opportunities, wherein earnings may be gained on aggregate small deposits, which earnings, after deducting necessary expenses, and a reserve for depositors' security, are divided among the depositors. There is no capital stock, nor are there stockholders in such institutions, and it is not a bank in the commercial sense of that word. It is not, however, for all purposes, a charitable society, and, under certain instances, has been held to be a business corporation: West's App., 64 Pa. 186; Bank for Savings

v. The Collector, 70 U. S. 495. The relation between the institution and the depositor is, in some aspects, that of a trustee and cestui que trust (Barrett v. Bloomfield Savings Institution, 64 N. J. Eq. 425, 433; State v. People's National Bank, 75 N. H. 27, 29); but it has been held the relation is the same as that of a depositor in a commercial bank, that of debtor and creditor: 7 C. J. 863, sec. 906. As affects the question before us, it is difficult to define—probably a little of both. A savings bank is not held to the same high degree of care as that required of a commercial bank, respecting its depositors or creditors: Kelley v. Buffalo Savings Bank, 180 N. Y. 171; 69 L. R. A. 317. A savings bank is liable to its depositors for want of ordinary care. It does not insure a fund on deposit, nor is its work purely gratuitous; and, while the depositors are the only ones to derive a benefit, none being secured by the organizers or trustees, it has been deemed wise, as a matter of public policy, to adopt the rule of ordinary care with relation to funds on deposit. The bank is of course required to pay the depositor or his attorney the amount credited in his deposit-book, unless relieved through some extraordinary circumstance; and, inasmuch as the depositors of savings institutions are so numerous and cannot be personally known to the officers of the bank, and as possession of the bank book is, under the deposit contract, prima facie evidence of the right to draw on the fund it represents, it became necessary to adopt rules to guard against imposition, not only by the depositors themselves, but by others through the carelessness of depositors. Accordingly, the rule hereinafter mentioned, or a similar one, with a number of others, has been adopted for the protection of such banks. These rules are printed in the deposit- or pass-books, by accepting the book, the depositor assents to the regulations and they become a part of the contract of deposit for the protection of the bank and the depositor, binding on both alike: Burrill v. Dollar Savings Bank, 92 Pa. 134; 3 R. C. L.

707, sec. 339; 7 Corpus Juris, 869, sec. 918. It is not material whether the depositor is able to read the English language. His duty is to make himself familiar with the rules. The situation is not similar to the case of an agent imposing some condition on an illiterate foreigner. Here the savings bank is sought by the depositor for the care of his savings. He should read, or have read to him, everything that relates to the deposits: Burrill v. Dollar Savings Bank, supra.

The rule printed in the depositor's book reads: "If any person shall present a deposit book at the office of the society pretending to be the depositor named therein, and shall thereby obtain the amount deposited, or any part thereof, and the actual depositor shall not have given previous notice at the office of the loss or theft of the book, the society will not be responsible for the wrongful payment, nor be liable to make good the same; provided that it has been entered in the book when made"; and, where ordinary care has been exercised and the money of a depositor is paid to a person other than the depositor, because of the failure of such depositor to comply with this rule, the bank would not be liable to the owner of the deposit for the loss.

But the bank must not be negligent in paying the money on deposit to another than the true owner or authorized agent, even though the pass-book is presented as authority for the payment and the true owner does not give the notice required by the rule. The bank is bound to exercise ordinary care to safeguard its depositors. Want of care may arise from a number of circumstances, as, where the bank required only the deposit-book to be presented, without other reasonable means of identification, or where knowledge was brought home to the bank's officers, of doubtful circumstances, calculated to excite suspicion in an ordinarily careful person, as, for instance, dissimilarity in the handwriting, patent to a person filling the position and performing the duties required of bank officers.

Under certain conditions there is a presumption the officers performed their duty. But when plaintiff shows money was deposited and the bank fails to return it, on proper notice, a prima facie case is made out; so in the present instance, with the money deposited and the bank failing to return it, a prima facie case was made out. It also appears from plaintiff's statement the bank book was stolen, and the only notice given of the loss was after the money was paid by the bank.

The bank had to exculpate itself from liability, and relied on the rule above quoted; if it is to have any effect beyond the rule of law common as to all deposits, it must somewhere operate to the benefit of the bank. To do so, that institution must present such circumstances in relief as will enable the depositor to test its good faith, accuracy and other diligence in the care of the fund; here such circumstances were presented when it met the conditions stipulated in the rule. Of course it is always essential to show it had not converted plaintiff's money, and it answered plaintiff under the rule by showing that the holder (plaintiff's impersonator) presented the pass-book, signed the necessary receipts, and the money was paid to him. But the bank is not yet relieved; it is open to an investigation of its own acts. Plaintiff could show such negligence or want of ordinary care as would make the depositary liable. This was not done by the mere proof of loss in the first instance. The depositor has the burden of proving negligence on the part of the bank (Israel v. Bowery Savings Bank, 9 Daly, N. Y. 507), and here the burden of proof rested on plaintiff to prove the bank had not exercised the care necessary under the circumstances. It was not incumbent on the bank to establish its innocence in this regard further than the rule required. The rule, to be effective, must not be weakened; the fact plaintiff did not know the book was stolen would be immaterial: Levy v. Franklin Savings Bank, 117 Mass. 448. He must know, and to do so he must keep his book in a safe place. If he is

careless and allows the book to lie around, as here, it is done at his peril; he should remember it may be stolen, the money secured before he can give notice, and he be the loser.

In the present case we have an institution doing business as a savings bank, with upwards of three hundred thousand depositors, nearly one-third of whom are foreigners. Plaintiff became a depositor of that institution in 1917. On Saturday, the 15th day of November, 1919, he missed the book and on the following Monday notified the bank of its loss. He claimed the book had been stolen, and he had not received the money on it. The book had been presented to the bank in the meantime at the end of a day's business, on the day, or close to the time, the loss was discovered. It was duly stamped, the money paid, and a receipt was shown from the man who presented the book and got the money. This latter evidence was in writing, or the facts admitted. It further appeared the person receiving the money answered all questions pertaining to the original identification card taken two years before, a very significant fact in view of defendant's assertion that plaintiff himself received the money.

This evidence would relieve defendant from liability, and entitle it to binding direction unless plaintiff proved it had not used due care in identifying the person presenting the book and receiving the money.

Was plaintiff's evidence sufficient to establish negligence or want of care? Instead of holding the company to the rule of ordinary care, the investigation was directed toward care of a most exacting character, the highest degree known to the law. When the pass-book was presented and the receipt taken, it was the duty of the bank officials to compare it with the original identification card, and, by the use of due diligence, ascertain if they were written by the same person. The payment was induced by the possession of the pass-book, the comparison of the signatures, and, if necessary in any case, examination as to contents of the identification card.

But if want of care may be established by showing that, in the comparison of signatures, after a most searching examination and investigation under a high power magnifying glass, certain dissimilarities appear which have a tendency to disclose a forgery, then the careful scrutiny of signatures by the bank officer, acting in good faith, goes for naught; the bank becomes an insurer against loss in all cases and care of the highest degree is substituted for that of ordinary diligence. The question would then be: Is the signature genuine? This is wrong; the inquiry should be: Did the signature on the receipt so closely resemble the one on the identification card that a person occupying the position of paying teller, or such other officer, would believe it to be genuine and pay on account of it? It may not be a genuine signature; defendant was not required to so establish it, to be relieved from liability. The only evidence tending to prove negligence was given by witness Senat, and he labored to show the receipt a forgery, after, as he says, making "a thorough analysis," using "a very powerful" magnifying apparatus. Our savings banks might well go out of business if paying tellers were required to subject writings to such examinations before money is paid. It is claimed the omission of a letter was a suspicious circumstance, enough to have put one on guard. In long names such as this, Andrzej Bulakowski, like mistakes by illiterate persons are not unusual; and plaintiff, in signing the affidavit to his statement of claim,—if ever he would be supposed to try to get it right,—omitted the letter "e" from his name. The general characteristics of the signature, to our unskilled eye, so much resemble those of the original that we would not hesitate to take it as such.

There was not sufficient evidence adduced by plaintiff of want of ordinary care on part of the bank officials in paying the money. Even in the case of a commercial bank, if a similar question to that now presented arose, the evidence here adduced would not have been suffi-

cient, in an instance where it could defend against a forgery, to call for its submission to the jury: Myers v. Bank, 193 Pa. 1. The case just cited was a suit to recover an amount paid upon forged signatures, where the checks had been returned to and destroyed by the forger, who was an employee of the depositor, charged with the duty of examining the returned checks, and the contention was that the bank was liable because it failed to exercise due care in scrutinizing the signatures before it paid the forged checks, though it would otherwise have been discharged because of the depositor's failure to notify it within a reasonable time after the bank book was balanced and the checks returned. We there said (p. 12) : "We find no evidence that required submission of the case to the jury,......nor was there any evidence of negligence on the part of the bank that should have been submitted to the jury. The checks purporting to be signed by the plaintiff were destroyed, and of course they were not produced. There was not a particle of evidence that the signatures were not such complete facsimiles of plaintiff's signature as to be impossible of detection, even by an expert. On this point, negligence is not to be presumed, and hence the presumption must be in favor of the bank. In the absence of any evidence, from the signatures themselves or from witnesses, that there was any difference between them and plaintiff's signature, which could be detected by the eye, it must be assumed that the forgery was of such a character that the bank, acting with due care and caution, was deceived by it. In fact there was no evidence...... that the bank in honoring the checks acted negligently." See also Bank v. Morgan, 117 U. S. 96, 107; United Security, etc., Co. v. Bank, 185 Pa. 586. We need not mention defendant's evidence on this line. The society was not required to produce it until plaintiff met the burden of proof, nor to answer the other wholly immaterial evidence. We have considered all of it and the

record amply sustains our conclusions. Plaintiff did not meet the burden of proof.

The judgment is reversed.