## Weller v. The Broad Street National Bank.

*Joseph M. Smith*, for plaintiff.

*Edmonds, Obermayer & Rebmann*, for defendant.

Lewis, J., May 7, 1931.—This is an action by the plaintiff, a depositor in defendant's bank, to recover the sum of $300, which the defendant charged plaintiff when it paid a check drawn by him on which he had ordered payment stopped. The matter was heard by the court without a jury, and involves solely a question of law. The check in question was drawn by plaintiff on November 1, 1927, and on November 2, 1927, he notified the defendant to stop payment on the check, which the defendant, notwithstanding the notice, paid on November 9, 1927.

The general principle is that "where a bank pays a check after receipt of notice from the drawer to stop payment thereon, it is liable to the latter for its failure to comply with his instruction:" Wall *v*. Franklin Trust Co., 84 Pa. Superior Ct. 392; Thompson *v*. Republic Trust Co., 84 Pa. Superior Ct. 183; German Nat. Bank *v*. Farmers' D. N. Bank, 118 Pa. 294. Unless, therefore, there is some additional fact which removes the instant case from the operation of that principle, or which estops the plaintiff from invoking it, plaintiff is entitled to a finding in his favor.

It is claimed by the defendant bank that such additional fact is to be found in plaintiff's written stop order, which provides that: "should the above check be paid by the Broad Street National Bank in error in the regular course of business I will not hold said Broad Street National Bank responsible in any way." The bank claims that the check, though paid seven days subsequent to the date of the stop order, was paid through inadvertence, and relies upon this provision as an escape from liability.

It will be noticed that the check stop order is not under seal; it neither recites nor discloses any consideration for the release of liability; nor is there any intimation, either in the release or in the evidence, that the bank demanded such release as a condition for performing its obligation. Even if we are to assume, as a mere conjecture, that the bank undertook to carry out the check stop order in reliance upon the release (the record is bare of any evidence that the bank did anything in that regard), plaintiff's release is, nevertheless, nothing more or less than a gratuitous promise, and, like every other *nudum pactum*, is not enforceable because there is no consideration to support it.

"A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound:" Wimer *v.* Overseers of Worth Township, 104 Pa. 317; Erny *v.* Sauer, 234 Pa. 330; Robb *v.* Mann, 11 Pa. 300.

In the last case the Supreme Court said: "The promise, if made, cannot bind the estate, but the administrator himself; nor him, if the promise is without consideration . . . because he merely did what he was bound to do by his contract."

In Fink *v.* Smith, 170 Pa. 124, the Supreme Court held that a promise made by one in order to obtain possession of his own goods, which at the time are wrongfully withheld from him, is without consideration.

In Cleaver *v.* Lenhart, 182 Pa. 285, 292, defendant had entered into a contract for the sale of his business to plaintiff, which had been fully performed; thereafter, in consideration of the purchase of said business, defendant agreed that he would not for a period of three years engage in the same business within a fixed radius. The Supreme Court held that the latter covenant had no consideration to support it, saying:

"But it has no consideration to support it. The previous sale being complete in all respects, the duty of the parties on both sides was clearly defined, and the obligation to perform it was comprehended within its express provisions. The agreement in restraint was no part of its terms and there was no obligation on the part of Lenhart to restrain his operations thereafter. . . . Hence the obligation of Lenhart to perfect the sale under the first agreement and the obligation of Cleaver to comply with its terms could not be a consideration for the restraining agreement of the subsequent date. The latter paper was a mere voluntary agreement in restraint of trade and, as such, cannot have legal sanction."

In Erny *v.* Sauer, 234 Pa. 330, a mortgagee, at a time when the mortgagor was already in default in his interest instalments, agreed to release the latter from further liability if he would surrender to the mortgagee possession of the premises and give him a deed of conveyance for the same. The Supreme Court held the release invalid for want of consideration, saying:

"But we are not impressed with the defendant's contention that the matter and acts he refers to constitute a consideration which will support the agreement. At the time the writ was issued in this case, the defendant had made default in payment of the semi-annual installment of interest due on July 1, 1910, and January 1, 1911. The plaintiff therefore, on March 1, 1911, the date of the alleged oral agreement, could have proceeded by scire facias, obtained judgment, sold the premises, and collected the indebtedness due him, secured by the bond and mortgage; or, he could have entered at pleasure, taken actual possession, used the land and reaped its profits: Tryon *v.* Munson, 77 Pa. 250. If the defendant refused to give possession, he could have been ousted by an action of ejectment. Assuming that he gave possession in pursuance of the alleged parol agreement, he did nothing more than it was his duty to do or what he could have been compelled by legal process to do. No consideration therefore passed by the plaintiff when the defendant voluntarily surrendered possession of the premises to him in pursuance of the agreement."

In all of the cases we have referred to there was a definite promise as consideration for the one sued on, but the latter was held unenforceable because the supporting promise relied on as consideration was to do something which the promisor was already under legal obligation to do; in the instant case there was not even a promise by the bank to carry out the depositor's check stop-payment instruction. It may well be said, paraphrasing the words of

the Supreme Court in Lewis *v.* Hamilton's Exec'rs, 301 Pa. 173, 176: If a promise to do what the promisor is already bound to do cannot be a consideration (13 C. J. 351, § 207), how much less (must we assume that there was no consideration) when there is not even a promise to do that which the promisor is already obliged to do. There is not even any intimation in the instant case that the bank threatened or had any intention of defaulting on its obligation to honor the depositor's stop-check order. The voluntary and gratuitous promise of the depositor at that time, that he would not hold the bank to its obligation if it paid the check in error, is, therefore, of no effect for want of consideration to support it.

Defendant contends that Cohen *v.* State Bank of Philadelphia, 69 Pa. Superior Ct. 40, calls for a different conclusion. We find nothing in that decision to support such contention. That case was not, as here, an action in assumpsit to recover a deposit, but an action in trespass for consequential damages for negligence in not honoring a depositor's check. The question there involved was whether, under all the circumstances, the bank had been negligent in refusing payment. True, the deficiency in plaintiff's deposit resulting in the dishonor of the check was due to the fact that the bank had previously paid another check after the depositor had directed it not to do so, but there the written stop-check order stated (and the Superior Court carefully calls attention to these unusual facts), "I ask this [the stopping of payment] as an act of courtesy only and in consideration therefor release the State Bank of Philadelphia from any liability on account thereof, or in the event of payment of the said check by error . . . should any check drawn by me be returned insufficient, I hereby release the State Bank of Philadelphia, from any and all liability therefor and on account thereof." The Superior Court is careful to say: "We do not say that such an order would protect a bank under all circumstances. We think it does in this case." When the Superior Court said:

"The plaintiff was not required to use the form of order but since he chose in writing to ask the bank to stop payment as an act of courtesy and not as a matter of right, he cannot now complain if the bank be relieved from liability by reason of the terms of the order which he gave," the Superior Court did not thereby attempt to lay down a general principle, but calls attention to it as one of the facts which robbed the bank's act of the element of negligence in subsequently dishonoring another check of the depositor. Moreover, the Superior Court clearly indicates that plaintiff was himself guilty of numerous acts which contributed to the dishonoring of his check and which barred his recovery, to wit, that he reported the check to have been lost when it never was lost in fact and when he knew it to be in the payee's possession; in issuing to the same payee another check including the amount of the stopped check; and because when the real payee of the stopped check presented it for payment, the bank (under all the circumstances and under the provision of the check stop-payment notice) might infer that the reason for stopping payment on the check had disappeared. Whether that conclusion was based on the theory of estoppel or on plaintiff's contributory negligence, there certainly is nothing in the opinion dealing with the question of consideration, and the differences in the character of the suits and in the circumstances involved make the Cohen case entirely inapplicable to the instant case.

Our attention is called to a Massachusetts and also to a New York decision where a different conclusion was reached on identical facts. They are, however, based on reasoning and principles inapplicable in our jurisdiction.

In Tremont Trust Co. v. Burack, 235 Mass. 398, 126 N. E. 782, the question as to whether there was consideration for the release was not raised; at least, it is not discussed in the opinion. The only question there involved is whether the release was invalid as against public policy. In holding that it was not against public policy, we believe that that opinion is contrary to the spirit of our own decisions (see Bulakowski v. Philadelphia Saving Fund Society, 270 Pa. 538).

In Gaita v. Windsor Bank, 251 N. Y. 152, the question of consideration for the release is only indirectly referred to; the conclusion is there apparently based on the theory that where the stop-check notice is unqualified and contains no release, "then if the bank does not desire to assume the liability imposed by such notice, it may cancel the account and terminate its relationship with the depositor.' But the bank's liability is not imposed by the notice, but flows from the relationship of the parties; and the assumption by the court that because a depositor asks a bank to perform one of its legal obligations, the bank is likely to refuse to do business with him in the future, is the merest kind of conjecture unless it find some support in the evidence. If we are to indulge in surmises not disclosed or supported by the record, it is much more significant that in Thompson v. Republic Trust Co., 84 Pa. Superior Ct. 183, where plaintiff was permitted to recover the amount of a check which the bank had honored after payment had been stopped, the written stop-check order contained a provision similar to that in the instant case, to wit: "I will not hold it [the bank] responsible in case check is paid." The terms of this release, however, while disclosed by the record, do not appear in the opinion of the court, nor is that provision of the notice discussed therein.

If, however, we are to go outside of our own state, the decision in Hiroshima v. Bank, 248 Pac. 947 (Cal.), is direct authority on the question involved. That case, too, concerned itself specifically with the validity of such a release executed under the same circumstances as at bar, and the court there held that the release was invalid both because there was no consideration to support it and because it was against public policy.

We believe that there is ample authority in our own state for holding that such a release is against public policy (a conclusion contrary to that reached in Tremont Trust Co. v. Burack, supra).

In Bulakowski v. Philadelphia Saving Fund Society, 270 Pa. 538, the Supreme Court held that a savings bank is liable to its depositors for a want of ordinary care, as a matter of public policy. The court there upheld a rule of a savings bank that payment to any person presenting the passbook should exonerate the bank unless the depositor had given previous notice of its loss or theft, but, nevertheless, held that even where no such notice was given "the bank must not be negligent in paying the money on deposit to another than the true owner or authorized agent, even though the passbook is presented as authority for the payment and the true owner does not give the notice required by the rule. The bank is bound to exercise ordinary care to safeguard its depositors."

In Wronski v. Frankford Trust Co., 84 Pa. Superior Ct. 511, 513, the Superior Court also said of such a rule:

"Its effect, however, was not to relieve the company of liability, in such circumstances, if in making such payment it neglected to use ordinary care: Bulakowski v. Phila. S. F. Society, supra; 3 R. C. L. 708, section 340; 7 C. J. 870, section 919."

In Bulakowski v. Philadelphia Saving Fund Society, 270 Pa. 538, 541, the Supreme Court said:

"A savings bank is not held to the same high degree of care as that required of a commercial bank, respecting its depositors or creditors: Kelley v. Buffalo Savings Bank, 180 N. Y. 171; 69 L. R. A. 317."

It seems to us all the more reason for not absolving a commercial bank from its negligence where the claimed exoneration is not in the original contract but in a subsequent gratuitous writing, and where notice to stop payment was served by the depositor.

However, we rest our conclusion squarely on the proposition that the stop-check order asked for that which the. bank was under a legal obligation to. do, and that the incorporated release in the event of payment through error must fall for lack of consideration to support it.

It follows, therefore, that the plaintiff must prevail. Accordingly, the court enters a finding for the plaintiff in the sum of $362.