## Adams Express Company *versus* Egbert.

A committee for the erection of a public building advertised for plans and specifications, and offered a premium of $500 to the successful competitor, who should present the same on or before a given day; the plaintiff, an architect, prepared and forwarded by the defendants, who were common carriers, a set of plans and specifications for the proposed building; but in consequence of the defendants' negligence, the box containing them was not delivered until after the time specified: *Held*, that the measure of damages, in an action against the carriers, was, not the value of the time and labour expended in making the plans and specifications, but the value of the plaintiff's chance of obtaining the premium.

In the absence of proof of any probability that the plaintiff would have obtained the premium, had his plans and specifications been delivered according to the contract, there can only be a recovery for nominal damages.

In all actions for the breach of a contract, the loss or injury for which damages are sought to be recovered, must be a proximate consequence of the injury. A remote or possible loss is not sufficient ground for compensation.

But the loss of profits or advantages which must have resulted from a fulfilment of the contract, may be compensated in damages, where they are the direct and immediate fruits of the contract, and must, therefore, have been stipulated for, and have been in the contemplation of the parties when it was made.

To entitle a plaintiff, however, in an action on a contract, to recover more than nominal damages for its breach, there must be evidence that an actual, substantial loss or injury has been sustained; unless the contract itself furnish a guide to the measurement of damages.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of *assumpsit* by Dr. A. R. Egbert against the Adams Express Company, for not delivering, in proper time, a box of drawings or architectural designs, sent by the plaintiff to the building committee of the Touro Almshouse, in New Orleans.

In the fall of 1858, the committee of the Touro Almshouse advertised for plans and specifications, and offered a premium of $500 to the successful competitor; and limited the time for presenting them to the 1st November 1858. The plaintiff was a competitor for this premium, and, on the 19th October 1858, delivered to James Louden, the defendants' agent, a box of drawings of plans for the said almshouse. Mr. Louden, not knowing

the amount to be charged for freight, sent the box to Baltimore, to the agent of the express company there, with directions to mark upon the box "freight paid," and to charge his office in Carlisle. The freight, $3.50, was charged to Mr. Louden's office as being paid, for which Louden gave the plaintiff a receipt; but the agent in Baltimore neglected to mark the prepayment of freight upon the box, so that when it reached New Orleans, the committee declined to pay the freight, and it was not delivered to them.

The mistake in not marking the freight prepaid having been discovered, the box was again sent to the committee, in March 1859, after the plans submitted had been passed upon, and the premium of $500 awarded to another person. When the box was delivered to the committee, the chairman, at the request of the agent of the express company, convened them to examine the plans of Dr. Egbert, which were found to be totally unsuited for the purpose for which the building was intended, and not at all adapted, in its ventilation, to the climate in which it was to be erected. The box was returned to the company, and by them to the plaintiff.

On the trial, the counsel for the respective parties presented certain points in writing, upon which they requested the court to charge the jury. The defendants' points, with the answers returned to them by the court, were as follows:—

1. That if the jury believe that the box containing the plaintiff's architectural designs or plans for building the Touro Almshouse, at the city of New Orleans, consigned to R. D. Shephard, G. Keersheed, and James Saul, were received by the consignees, though not until a plan for such building had been selected, and the premium therefor paid, on account of the omission of the defendant to mark the freight of the box prepaid; and the jury also believe that such plan of the plaintiff was totally unsuited for such building, and wholly objectionable, and that had it arrived in due time, it would not have been selected or adopted, nor the premium paid for it; and that the plaintiff would have gained nothing by its being received in due time, and lost nothing by the omission of the defendant to mark the prepayment of the freight to New Orleans, and the plaintiff sustained no actual damage thereby, he is entitled to nominal damages only.

Answered in the affirmative.

2. Independent of the defendants' evidence in the cause, there can be no recovery by the plaintiff beyond nominal damages, the plaintiff not having proved any actual damages, and the chance for the premium being a contingent one.

Answer.—"We cannot answer this point as requested: we will state the law applicable to this position in answer to the plaintiff's second point."

[Adams Express Company *v.* Egbert.]

The plaintiff's points, and the answers to them, were as follows:—

1. That it is incontrovertibly proved that the box set out in the declaration was delivered to the defendant, to be carried and given to the persons to whom the same was directed; that it was not delivered in pursuance of their contract, and therefore, the plaintiff is entitled to recover in this action, and the only question of fact referred to the jury is, how much the plaintiff is entitled to recover.

Answered in the affirmative.

2. That the intrinsic value of the property sent is not the only measure of damages, but that it is the duty of the jury to take into consideration the nature of the property, the talent and labour of the man necessary to produce the drawings, the reputation which he had involved in obtaining the decision of the committee in his favour, the fact that all his hopes, expectations, and profits were cut off by the negligence of the defendants, are fit subjects for the consideration of the jury in assessing the damages.

Answer.—"If the defendants failed to perform their contract, and if the evidence fails to satisfy you, that if the contract had been performed, it would have been of no benefit or advantage to the plaintiff, then you may take into consideration the time and labour bestowed on those plans and drawings, in expectation of being a competitor for the premium offered. If the plaintiff thought proper to bestow his time and labour for the purpose of being a contestant for the offered premium, and having his designs exhibited before the committee, and he has been disappointed in this, by the wrongful act of defendant, this is a proper subject for consideration, and in this aspect of the case the plaintiff may recover more than nominal damages. What amount of damages, if any, the plaintiff ought to recover, under all the evidence, we submit to you to determine; but in any event, it is admitted that nominal damages may be recovered."

3. That it is the duty of the jury to discard from their minds, any evidence tending to prove what was the opinion of any member of the committee to whom the plans were to be submitted, except that of R. D. Shephard, for so far as the evidence has been given in this cause, it was never submitted to the committee, and all chance of his obtaining the premium, and the reputation which a decision in his favour would have entitled him, was cut off by the gross negligence of the defendant.

Answered in the affirmative.

To these answers the defendant excepted; and a verdict and judgment having been rendered for the plaintiff for $375, the defendant removed the cause to this court, and here assigned the same, *inter alia*, for error.

[Adams Express Company v. Egbert.]

*Williamson* and *S. Hepburn*, for the plaintiff in error.—In the absence or failure of proof of actual damages, nominal damages only are recoverable in actions on contract: Whittemore v. Cutter, 1 *Gall.* 429–33; Pastorius v. Fisher, 1 *Rawle* 28; *Paley on Agency* 74; Marzette v. Williams, 1 *B. & Ald.* 415; Bruce v. Pettengill, 12 *N. H.* 311; Dry Dock Co. v. McIntosh, 5 *Hill* 290; Godfrey v. Hewitt, *Id.* 644; Feize v. Thompson, 1 *Taunt.* 121; Brantingham v. Fay, 1 *Johns. Cas.* 255; *Addison on Contracts* 1138; Lawton v. Sweeny, 8 *Jurist* 964; Clunness v. Pezzey, 1 *Campb.* 8. The loss of supposed profits is too remote to form a basis for the calculation of the plaintiff's damages: The Lively, 1 *Gall.* 314–15; Masterton v. Mayor of Brooklyn, 7 *Hill* 62; Blanchard v. Ely, 21 *Wend.* 342; Bell v. Cunningham, 3 *Peters* 85; Gilpins v. Consequa, *Pet. C. C.* 85; The Amiable Nancy, 3 *Wheat.* 543; Farmers' Bank v. McKee, 2 *Barr* 318–20; 1 *McCord* 489; 3 *Harris* 488; 2 *Id.* 97.

The time and labour bestowed by the plaintiff on his plan, if he was disappointed in being a competitor for the premium, through the negligence of the defence, was not the proper rule for the estimation of his damages. The intrinsic value of the property was the true rule; the chance of the premium was too remote to be taken into the consideration of the jury: Masterton v. Mayor of Brooklyn, 7 *Hill* 62; Williams v. Bartine, 3 *Louisiana* 404; 1 *Chit on Cont.* 332; Laing v. Colder, 8 *Barr* 484; Good v. Mylin, *Id.* 56; 1 *Saund Pl.* 136; 1 *Chit. Pl.* 296; *Story on Agency*, § 222.

*Watts & Parker*, for the defendant in error, cited Watson v. The Ambergate, Nottingham and Boston Railway Company, 15 *Jurist* 448.

The opinion of the court was delivered by

STRONG, J.—The express company are common carriers. In 1858, they received from the plaintiff below, a box containing plans and specifications, to be forwarded to a committee who had offered a premium of $500 to the successful competitor, for the best plans for the Touro Almshouse at New Orleans. The plaintiff's drawings were sent for competition. In consequence of the default of the company, they were not delivered until after the appointed day for receiving them, nor until after the premium had been awarded. The committee was, however, then convened, and the plans were examined. On the trial, it was proved by one member, the only one whose testimony was taken, that in his opinion, the plans, had they been received in time, would not have been adopted, because they did not suit the climate, and because they were altogether objectionable. This is an action against the company to recover damages for the breach of their contract to

[Adams Express Company *v.* Egbert.]

deliver in time, and the question is, what is the proper rule for the measurement of damages.

It is doubtless true, that in all actions for the breach of a contract, the loss or injury for which damages are sought to be recovered, must be a proximate consequence of the breach. A remote or possible loss is not sufficient ground for compensation. There is no measure for those losses which have no direct and necessary connexion with the stipulations of the contract, or which are dependent upon contingencies, other than the performance of the contract, and which are therefore incapable of being estimated. With no certainty can it be said, that such losses are attributable to the wrongful act or omission of him who has violated his engagement. But on the other hand, the loss of profits or advantages, which must have resulted from a fulfilment of the contract, may be compensated in damages, when they are the direct and immediate fruits of the contract, and must therefore have been stipulated for, and have been in the contemplation of the parties when it was made.

Applying this rule to the present case, why was not the loss of the opportunity to compete for the premium (whatever may have been its value), an immediate consequence of the breach of the contract? Why was not that loss in contemplation of the parties? The company undertook to transport the box to the committee appointed to award the premium. The purpose of the contract was to secure to the plaintiff the privilege of competition. Certainly he must have had that in contemplation, and if the company were informed of the object of the transmission, the loss of this privilege was in view of both parties at the time they entered into the contract. But whether known or not by the company, the loss was an immediate result of their negligent breach. We do not now stop to inquire, whether the defendants can be held liable for every consequence, even though immediate, which cannot reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Perhaps, if the special circumstances, under which the contract was made, and which occasioned special and unusual injury to attend its breach, were unknown to the party which broke it, they could not be held to make compensation for more than the amount of injury which generally results from the breach of such contracts in cases unattended by any special circumstances. We are inquiring now, however, only whether the loss of the opportunity by the plaintiff to exhibit his plans and specifications for competition, was, or was not, too remote a consequence of the breach of contract to be taken into consideration by the jury. We cannot perceive why it was not the first consequence, proximate, immediate. Some doubt may be suggested, arising out of the case of Watson *v.* The Ambergate, Nottingham

[Adams Express Company *v.* Egbert.]

and Boston Railway Company, 15 *Jurist* 448, a case in the Queen's Bench, England, the facts of which closely resemble those of the present case. There a prize had been offered for the best plan and models of a machine for loading colliers from barges, and plans and models for the competition were to be sent by a certain day. The plaintiff sent a plan and model accordingly by a railway, but through negligence, it did not arrive at its destination until after the appointed day. The court appeared to be of opinion, though the point was not directly raised, that the proper measure of damages was the value of labour and materials expended in making the plan and model, and not the chance of obtaining the prize, the latter being too remote a ground for damages. PATTESON, J., said, that the right principle upon which damages were recoverable, was, that the goods were made for a special purpose, which had been defeated by the negligence of the defendants, and thus they had become useless.

It is difficult to see how the loss of the time and labour expended, is a less remote consequence of the breach of the contract, than is the loss of the opportunity to compete. Nor is it apparent, how the value of the labour and materials expended upon the plan and model in that case, or the value of the time and labour devoted to the plans and specifications in this, can be regarded as any measure of the damages sustained in consequence of the non-delivery in time of the articles sent, unless the opportunity to compete for the prize be also taken into the estimation. If the chance for the prize is too remote, if it has no appreciable value, and cannot be considered by the jury, then what has been lost by the breach of the contract to deliver in time? Not the plans and specifications, for they are still in existence. The plaintiff has them. The time and labor would have been lost, without any breach of the contract, if the plaintiff's competition for the prize had proved unsuccessful. Their loss was not, therefore, necessarily a consequence of the breach of the contract. And if the time and labour were expended, solely to secure a chance which was valueless, how can they have any value? They are certainly as remote and as contingent as is the chance itself. The fact appears to be, that the opportunity to compete, is what gives the time and labour expended any value, and if there can be any recovery at all, beyond nominal damages, as was held by the Queen's Bench, it must be because the loss of the chance for the prize, as it was then called, or, as I would term it, the loss of the opportunity to compete for the prize, is not too remote to be considered, and because its worth is capable of being measured.

But how is this loss to be estimated? Suppose the engagement of the company had been directly to afford to the plaintiff an opportunity to compete for the premium offered. Could he, for the breach of such an engagement, have recovered more than

[Adams Express Company v. Egbert.]     •

nominal damages, without any proof that any actual injury had resulted from the breach? We think not. To entitle a plaintiff, in an action founded on a contract, to recover more than nominal damages for its breach, there must always be evidence that an actual, substantial loss or injury has been sustained, unless the contract itself furnishes a guide to the measurement of the damages; and even when there *is* some such proof, but the amount is uncertain, courts have sometimes directed the jury to allow the smallest sum which would satisfy the proof: Lawton *v.* Sweeny, 8 *Jurist* 964; Clunness *v.* Pezzey, 1 *Campb.* 8. A plaintiff claims compensation. The amount of that compensation is a part of his case. Whether in the present case this plaintiff sustained any actual injury, depended upon the degree of probability there was, that he would have been a successful competitor if the contract had not been broken. If his plans were entirely defective, if they were suited better for a bridge than for an almshouse, it cannot be claimed that he was damaged. He introduced, however, no evidence to show that there was the least probability that the premium would have been awarded to him, had his plans been submitted to the committee in time. On the contrary, the defendants proved that doubtless he must have failed. So far, then, from there being proof of actual damage, it was disproved. The court below, however, instructed the jury that there might be a recovery for more than nominal damages. They reversed the rule generally recognised, that the plaintiff must show a substantial, real injury, and cast upon the defendants the burden of proving that there was none. In this we think there was error. The second point of the defendants should have been affirmed unqualifiedly. Independent of the defendants' evidence, the plaintiff was not entitled to recover more than nominal damages, because he had not proved any actual damages, and the chance for the premium was contingent. Much more was this so upon the whole evidence in the cause.

The observations already made are also applicable, in part, to the answer of the court to the second point of the plaintiff, in which the same error is apparent.

We do not understand the court's answer to the plaintiff's third point as it is understood by the plaintiffs in error. The court could not have intended to instruct the jury, that under any circumstances, the plaintiff could recover for loss of a chance to secure reputation, or that the negligence of the defendants alone took away his chance of obtaining the premium. Had they done so, it would have been mistaken instruction.

The remaining assignment of error is not sustained.

Judgment reversed, and a *venire de novo* awarded.