## Spiese v. Mutual Trust Co. et al., Appellants.

*Contracts—Agreement to loan money—Breach—Proximate result —Building operation—Abandonment—Payment of part—Estoppel —Damages—Measure of damages.*

1. An essential element of estoppel is that the party seeking to rely upon the doctrine must have been misled to his injury by reason of either the action or silence of the other.

2. The payment of part of a sum due under a contract is only conclusive on the party to whom the money is owing as an acquittance for that amount; it does not estop him from claiming the balance due in accordance with the terms of the contract.

3. The measure of damage for breach of contract must be a proximate and not a remote, result of the breach; and must be one the defaulting party was bound to foresee would result as a probable consequence.

4. Plaintiff, a builder, desiring to erect dwelling houses applied to a trust company for a loan to purchase the real estate and erect the buildings, stating that he would need $40,000. The builder was at that time indebted to the trust company for sums amounting to $20,-000. The builder was informed by the president of the trust company that if acceptable security was furnished the amount desired would be allowed as a collateral loan. The arrangement for the loan was subsequently made and plaintiff was to purchase the property and execute mortgages thereon in favor of the trust company to be held by it with other securities amounting in toto to $149,650 as collateral for advancements made from time to time as needed in the building operation. Thereafter at the request of the trust com-

pany the builder delivered a memorandum in which he stated "in consideration of your advancing $40,000 on my note, secured by mortgage on ground and buildings,......together with other collateral, I agree to pay you the sum of $2,000 as commission...... and at the same time I authorize you to charge against my account for collateral." The collateral was deposited and the builder commenced work on the houses. But the trust company refused to advance more than would be sufficient to raise the builder's total indebtedness to the trust company to $40,000. Then the trust company paid the plaintiff $1,960, making the total indebtedness $40,000. By reason of the trust company's refusal to advance the additional $20,000, the builder was unable to complete the building operation. The builder brought a bill in equity to compel the surrender to him of said collateral upon payment of defendant's advances, less damages suffered by plaintiff because of the refusal of the defendant to carry out its agreement. *Held,* (1) the conclusion of the lower court that the trust company agreed to advance the sum of $40,000 in addition to the indebtedness already existing was amply supported by the evidence; (2) plaintiff, by accepting $1,960, with knowledge that the trust company denied liability for further advances, was not estopped from making a demand under his contract for the remainder of the $40,000; (3) damages were properly awarded by the lower court for the amount paid on account of construction work, the court having found that such payment was rendered a total loss by the abandonment of the operation, but the court erred in permitting recovery for loss of materials from the site of the operation by theft after work had stopped, such loss not being a proximate result of the breach of the contract; and the decree was modified accordingly and affirmed.

5. In such case plaintiff testified the market value of the land and the construction placed thereon at the time the work stopped was about $15,000; it appeared the purchase-price of the land a short time previous was $12,500. *Held,* (1) while the difference between these sums may reasonably be assumed to represent the value of the work, this value is too speculative to be used as a measure of damage; (2) the burden was on defendant to show at least that the securing of a ready purchaser was reasonably certain before the work already done had deteriorated, or that the materials in place possessed a cash value at the time the work stopped.

Argued March 19, 1917. Appeal, No. 367, Jan. T., 1916, by defendants, from decree of C. P. No. 2, Philadelphia Co., March T., 1915, No. 4558, directing defendants to surrender to plaintiff certain property and se-

curities upon payment by plaintiff to defendants of certain sums therein specified, in case of Franklyn Spiese v. Mutual Trust Company, a corporation, and William B. Kessler. Before Brown, C. J., Stewart, Moschzisker, Frazer and Walling, JJ. Modified and affirmed.

Bill in equity for the transfer to plaintiff of certain property and securities. Before Wessel, J.

The opinion of the Supreme Court states the facts.

The court directed the transfer by defendants to plaintiff of the property and securities named in the bill upon payment by plaintiff to defendants of his indebtedness to defendant, less the damages which plaintiff had sustained by reason of defendants' breach of contract as ascertained by the court. Defendants appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*Charles H. Edmunds,* for appellants.

*Henry J. Scott,* for appellee.

Opinion by Mr. Justice Frazer, June 30, 1917:

Defendants appeal from a decree directing the surrender to plaintiff of certain collateral held as security for money advanced him, upon payment of such advance less the damages suffered by plaintiff because of the refusal of defendant company to carry out its agreement.

Plaintiff, a builder by occupation, desiring to erect dwelling houses in the City of Philadelphia, applied to defendant, the Mutual Trust Company, for a loan of sufficient funds to purchase the property and erect the buildings, stating he would need $40,000. At the time plaintiff was indebted to the trust company for an unpaid balance on a previous building operation the latter had financed amounting on December 28, 1914, includ-

ing a loan of $2,150 made on that date, to the sum of $20,000. The application was referred to the finance committee of defendant company and by that committee to the president to arrange details who informed plaintiff, if acceptable security was furnished, the amount would be allowed as a collateral loan. In the meantime, in response to a request, plaintiff submitted to defendant a financial statement in which it was represented he held deeds to a number of properties scheduled, giving their respective assessed value and also his personal estimate of value, and including an item of "stocks, bonds, judgments and other notes" valued at $60,000. The schedule concluded with the statement: "Correctness of assessment may be few hundred either way. I owe no unsecured debts and believe I am worth over $100,000." Although this schedule and statement was submitted to defendant, and is admittedly inaccurate, the trial judge found, and such findings are amply supported by the evidence, that its contents were not relied upon by the trust company or used as a basis for making the loan, but, on the contrary, it demanded and received collateral, and treated the transaction throughout as a collateral loan.

The principal dispute between the parties was whether defendant company should advance the sum of $40,000 in addition to the amount already owed by plaintiff to defendant company, or whether, as contended by defendant, the company should merely make additional loans to an extent sufficient to bring the total indebtedness to an amount not exceeding $40,000. On December 24, 1914, an arrangement for the loan was verbally made whereby plaintiff was to purchase the ground in question and execute two mortgages upon the property of $48,000 each, in favor of the trust company, to be held by it, with other securities, amounting in all to the face value of $149,650, as collateral for advancements made from time to time as needed in the building operation, the trust company to receive six per cent. interest and

an additional sum of $2,000 for services in furnishing the money. Under date of December 26, 1914, plaintiff, at the request of defendant company's president, signed and delivered to the company the following written memorandum, in the form of a letter: "In consideration of your advancing $40,000.00 on my notes, secured by mortgage on ground and buildings to be erected at Cedar and Westmoreland streets, together with other collateral, I agree to pay you the sum of $2,000.00 as commission, the same to be paid upon completion of said houses when I receive first mortgage money on refinancing the same and at the same time I authorize you to charge same against my account for collateral." Various loans were subsequently made from time to time under the terms of the agreement, until April 3, 1915, when plaintiff's note for $3,000 was refused by the trust company for the reason the amount, together with sums already advanced, when added to the indebtedness existing at the time the loan was arranged for, would exceed the total sum of $40,000. A new note in the sum of $1,960 was then substituted for the one first presented, making the amount due by plaintiff in both transactions aggregate the sum of $40,000. Following the trust company's refusal to make further advancements plaintiff offered to repay the sum of $20,000 and demanded return of his collateral, which demand the company refused to comply with and insisted upon payment of the entire unpaid balance before releasing the securities. By reason of the company's refusal to advance the further sum of $20,000 or surrender part of the collateral, plaintiff was unable to complete the building operation and the money already expended toward the erection of the buildings was lost; for the injury resulting plaintiff claimed reimbursement in this proceeding.

Although the testimony is conflicting, a consideration of the writing, together with the oral testimony offered as to what was said and done before the execution of the writing, fully supports the conclusion of the court be-

low that the trust company agreed to advance the sum of $40,000 in addition to the indebtedness already existing, and under such circumstances this court will not reverse: Anthracite Lumber Co. v. Lucas, 249 Pa. 517; Hull v. Del. & Hudson Co., 255 Pa. 233.  The writing standing alone would not be susceptible of any other construction, and while defendant company seeks to avoid its effect by contending its purpose was not to replace the alleged oral agreement concerning the loan but simply furnish written evidence of the amount plaintiff agreed to pay as commission for the financial assistance to be rendered him, this contention, at most, in view of the evidence offered on behalf of plaintiff, raised nothing more than a disputed question of fact, and no sufficient reason appears to justify our interference with the conclusion reached by the trial court.

We cannot approve defendants contention that plaintiff, by accepting $1,960, with knowledge that the trust company denied liability for further advances, is estopped from making demand under his contract.  Upon plaintiff's application for $3,000 he was informed no more than $1,960 would be advanced, as this sum brought the total indebtedness to $40,000; while the amount of the lesser note was accepted, within a week thereafter plaintiff consulted his attorney who wrote defendant company asking an explanation of its refusal to advance the additional money.  We find no evidence that plaintiff agreed to accept $1,960 and waive further claim under his contract, nor did his failure to protest at the time, under the circumstances of the case, estop him from subsequently demanding further payments in accordance with his understanding of his contract.  An essential element of estoppel is that the party seeking to rely upon the doctrine must have been misled to his injury by reason of either the action or silence of the other: Sensinger v. Boyer, 153 Pa. 628.  This element is entirely lacking here.  Defendant company paid only what it conceded to be due, and certainly was not prejudiced by

so doing. Its position was in no way altered so far as the claim for an additional loan of $20,000 was concerned. Nothing was done by it, because of the silence of plaintiff, calculated in any respect to render its position less favorable. The payment to plaintiff of the $1,960 was conclusive on him as an acquittance for that amount, but did not estop him from claiming a balance due in accordance with the terms of the contract: Atkins v. Payne, 200 Pa. 557.

Defendants further complain of the measure of damages adopted by the court below. The claim made by plaintiff for loss of profits on the operation from a sale of the houses was rejected, and damages were allowed in the sum of $9,149.50, the amount plaintiff paid out on account of construction work, which on abandonment of the operation, the court found to be a total loss. A portion of this loss included materials purchased but unused, and the court found as a fact that at the time work on the buildings ceased materials were on the ground intended for use in the houses of a value between $1,500 and $2,000, for which amount defendants claim they should be allowed credit. Plaintiff accounts for the loss of these materials by saying they remained on the premises after the work ceased and were carried away by "thieves of the neighborhood." An excuse of this character is entirely insufficient to impose upon defendant a liability for loss resulting under such circumstances. The measure of damage for breach of contract must be a proximate, and not a remote, result of the breach,—one the defaulting party was bound to foresee would result as a probable consequence: Adams Express Co. v. Egbert, 36 Pa. 360. That materials placed upon the premises would be stolen is not such a natural result as should be expected. Plaintiff was bound to properly guard the premises and protect unused materials from loss or destruction, and to that end exercise the same decree of care and caution usually employed on the part of contractors during the performance of similar work.

Upon abandoning the work of construction plaintiff's duty was to take reasonable steps to preserve the movable materials and reduce the loss, and, in absence of such action, he cannot claim compensation from defendants for the result of his negligence: Leitzell v. Delaware, Lack. & Western R. R. Co., 232 Pa. 475; Penna. R. R. Co. v. Titusville & Pithole Plank Road Co., 71 Pa. 350. The same principles apply to materials already used and put in place. As to these, however, the evidence fails to show a neglect of duty on part of plaintiff. A considerable portion of both work and materials had, up to the time of abandonment of the operation, gone into the foundations and concrete and masonry work and was a total loss, according to plaintiff's testimony to the effect that the cost of putting the cellars into shape and reconstructing the concrete would equal the cost of rebuilding. Appellants offered no evidence to show the materials in place were removable and capable of being disposed of and the damage thus reduced, but, in support of their contention that the damage was capable of being further reduced, relied upon the testimony of plaintiff who stated that in his judgment the market value of the land and construction done thereon at the time the work stopped was about $15,000, though he doubted whether an offer for the property was obtainable. Since the property was purchased but a short time previous to beginning construction of the houses, it is reasonable to assume the increase of value between the purchase-price of $12,500 and the estimate given by plaintiff represented the value of the work already done. This value however was merely a possible one, depending upon the continued and successful prosecution of the work and completion of the operation. In view of the evidence that construction of this character, when left open and unprotected from the weather, as it naturally would be, rapidly deteriorates, the value of the operation on the day the work ceased and its actual value sometime thereafter when a purchaser might be found, presented an

entirely different situation rendering the actual difference in money value speculative in character to such extent as to make it useless as a measure of damage. The burden was on defendant, to show at least that the securing of a ready purchaser was reasonably certain before the work already done had deteriorated or that the materials in place possessed a cash value at the time the work stopped.

The decree of the court below is modified by deducting, from the damages allowed plaintiff, the amount of $2,000 the sum representing the value of the building materials on the ground at the time the work ceased, thus fixing the amount at $7,149.50. In computing interest it should be calculated on the various sums advanced by defendant as represented by notes amounting to $20,000 to April 3, 1915, at which time the damages in the sum above named should be deducted and defendant allowed interest on the balance to the time of final payment. As thus modified the judgment is affirmed.