Blose Estate.

Submitted April 14, 1953. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

Appeal, No. 88,  reargument refused June 27, 1953.

*Albert H. Heimbach,* for appellant.

*George A. Shutack,* for appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1953:

This case involves a claim against a decedent's estate for an alleged gift *inter vivos* by the decedent to the claimant. The court below entered a decree rejecting the claim and the claimant has appealed. The material facts, which were competently proven, are undisputed.

Fulton J. Blose, the decedent, who was unmarried, lived the last year or so of his life in the home of the claimant, Mrs. Ellen J. Reber, and her husband in West Bowmanstown, Carbon County, to whom he was not related. At the time of his death on June 4, 1950, Blose was 78 years old. Mrs. Reber was then 72. During his lifetime, the decedent had a savings account in the Bowmanstown Bank which, at the time here in question, amounted to $5,050.

A few days prior to his death the decedent entered a hospital. On Saturday, June 3rd, Mrs. Reber went to the home of Paul S. Balliet, the assistant cashier of the Bowmanstown Bank. She told him that "Mr. Blose wanted to see [him] in the hospital, and she handed [him] Mr. Blose's bankbook" which Blose had instructed her to get and give to Balliet and to tell him to come down to the hospital. Pursuant to the request, Balliet went to the hospital that afternoon and had a conversation with Blose. According to Balliet, "Mr. Blose said that he wanted to put Mrs. Reber's name on the bankbook, and I said, 'O.K.' Then I said, 'When Mrs. Reber comes for money, shall I give her some?' And he says, 'Yes, that is Ellie's [Mrs. Reber's] money.' The conversation was in Pennsylvania Dutch, so I am just translating it as best I can." Balliet had with him the

necessary signature cards for adding Mrs. Reber's name, but he did not ask Blose to sign anything because, as he said, "I saw the man could not write, I mean, he was sort of—I wouldn't say exactly numb, but he showed me his hands, and I knew he was in no condition to sign his name." There was no question, however, as to Blose's mental capacity. Balliet said that "he was . . . a hundred per cent rational, he was O.K."

Balliet left after assuring Blose that he "would take care of that [the subject-matter of the conversation] Monday morning, because there was no banking on Saturday . . . ." Sunday evening Balliet heard that Blose had died, so he made no change in the account on Monday on the books of the bank. He gave the bankbook to a Mrs. Snyder, the administratrix c.t.a. of Blose's estate, when she claimed the account. The bank, however, paid the fund into court. Mrs. Reber pressed her claim to the money by exceptions to the administratrix's account which were disposed of by the Orphans' Court with the result already indicated.

What the deceased did was to assign a chose in action by acknowledging as much to his debtor and obtaining from the latter an agreement to pay the debt to the assignee. The cases cited by the appellee, where alleged *inter vivos* gifts of savings accounts were held not to have been legally effectuated, are not presently germane because in none of them (save one to be distinguished later) was the debtor bank a party to the transaction. Other cases cited by the appellee were concerned with alleged gifts of chattels and not choses in action and are therefore still more inapposite. Such an agreement between a depositor and his bank need not be in writing to be legally effective. Just as the bank in this case did through its assistant cashier, a bank may waive its rights to require written orders and may act upon a merely oral order: *Ogdon v. Washing-*

*ton Nat. Bank,* 82 Ind. App. 187, 145 N.E. 514; see also *Watts v. Christie,* 11 Beav. 546, 552, 50 E.R. 928; *Gaunt v. Alabama Bound Oil & Gas Co.* (C.C.A. 8), 281 Fed. 653, 655; 7 Am. Jur. §504; and 9 C.J.S. §288, p. 599. If the creditor later seeks to recover from the bank for obeying his oral order, he is estopped: *Pierson v. Union Bank & Trust Co.,* 181 Ky. 749, 205 S.W. 906; see also 2 A.L.R. p. 175. The case of *McHale v. Toole,* 258 Pa. 293, 101 A. 988, which the appellant cites is also distinguishable from the instant case. In the *McHale* case the depositor told the bank that the transfer was for convenience during the depositor's stay in the hospital, whereas here the depositor said ". . . that is Ellie's money."

The fact that Mrs. Reber never got to sign a signature card is of no relevant significance. A signature card is not necessary to prove ownership of a bank account. Such a card becomes material when a withdrawal from the account is sought upon signature. Nor need the bank rules printed in the pass book be complied with, if the bank does not so require; they "are only for the convenience and protection of the bank and may be waived": *Geist v. Robinson,* 332 Pa. 44, 47-48, 1 A. 2d 153.

When Balliet left Blose in the hospital with the assurance that he would attend to making the formal entries on the bank's books on Monday following, Blose understood that he had done everything necessary to effectuate the assignment. And, so he had. An "oral direction to the bank to pay the intended donee, accepted by the bank, . . . has been held to effect a gift of the account": Bogert, Trusts and Trustees, Vol. 1A, §142, p. 22. The fact that the next day was a Sunday (when, perforce, the bank was not open for business) and the assignor happened to die on that day before the assignee's name had been added to the book and the

bank account is but an accidental factor which does not logically or legally affect the result. When the bank chose to waive the more formal requirements of its rules, as the assistant cashier plainly did, the assignment became complete and there was nothing left to do, so far as the bank was concerned, but to reflect the assignment on its books. The depositor having died in the meantime, the bank, of course, acted circumspectly in not changing its books after his death, but that does not operate to impeach or impair the validity of the oral assignment as between the assignor and the assignee who, incidentally, according to Balliet, had been told by Blose with relation to his contemplated action that the money was hers.

The decree is reversed at the appellee's costs and the fund in controversy with any increment is awarded to the appellant.