448 A.2d 1119

**Robert LAYMAN, Administrator of the Estate of Alexander S.
Layman, Deceased, Appellant,**

v.

**WESTERN SAVINGS BANK.**

Superior Court of Pennsylvania.

Argued Feb. 18, 1982.

Filed July 30, 1982.

434

Gilbert E. Toll, Philadelphia, for appellant.

Christopher K. Walters, Philadelphia, for appellee.

Before JOHNSON, MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

The instant action presents the problem of deciding which of two innocent parties suffers a loss when a fiduciary is a

thief. Appellant herein is the administrator of an estate who opened an estate account at the appellee bank, Western Savings. Appellee disbursed funds from the account when the attorney for the estate presented the passbook together with a withdrawal slip correctly signed by appellant himself. The court below entered judgment in favor of the bank-appellee and against the administrator-appellant and we affirm.

The appellant first contacted another attorney to handle the estate, and presented him with certain papers and records, among which were the passbook and a withdrawal slip signed in blank. On January 12, 1976, appellant turned the estate over to a new attorney, S. Donald Keesal. The passbook and the withdrawal slip were in the file. Within twenty-four hours, Keesal had presented the passbook and the withdrawal slip filled in by him for $27,000, to a teller at the Western Savings Bank (appellee bank) and had requested disbursal in the form of three checks and cash in an amount exceeding a thousand dollars.

When the teller followed bank procedure by requesting a signed acknowledgment by the customer of the dangers of carrying more than a thousand dollars in cash, he realized that the signature was not that of the administrator as on the withdrawal slip. This was not unusual because estate monies are frequently disbursed by the attorney rather than the executor of the estate, as the teller later testified. He nevertheless spoke with his supervisor, the bank manager, who checked the signature for authenticity, and then issued the requested sums in checks only: two checks, each for more than $7,000 were made out to individuals, one check for $10,000 was made out to the estate, and a fourth check was made out to Keesal himself for $1,104.83.

Because appellee was a savings bank and not a full-service bank, it maintained a checking account at Fidelity Bank as an ordinary customer, and the four checks were all drawn on that account. Three of those checks were indorsed with the name of the individuals to whom they were written. The estate check was negotiated at Industrial Valley Bank with

an indorsement as follows: "Estate of Alexander S. Layman, S. Donald Keesal." This check was then sent on to Fidelity Bank, which also honored it.

Appellant makes two arguments: first, he says appellee was negligent in disbursing *any* funds and is responsible to return the entire $27,000 to the estate; second, he argues that the indorsement on the estate check was defective and that appellee is at least responsible for the honoring of an improper signature by its agents, the other two banks. Neither argument can prevail.

Bank accounts may be the subject of an expressed or implied contract. *Cohen v. Marian*, 171 Pa.Super. 431, 90 A.2d 373 (1952). Savings banks have the power to make regulations governing receipts and disbursement of deposits which are binding on depositors and their personal representatives when they have actual or constructive notice. 5 Pennsylvania Law Encyclopedia "Banks and Banking" § 84, at 303 and cases cited therein.

The "Rules and Regulations Respecting Deposits and Payments" as published and distributed by pamphlet at the time the account was opened contained in pertinent part the following rule under "Payments" at IV (5):

> If any person shall present in person . . . a deposit book . . . evidencing indebtedness of the Society . . . claiming to act under authority from the depositor, and shall thereby obtain the amount deposited . . . the Society will not be responsible for the wrongful payment or be liable to make good the same.

The above rule is in line with case law which has held that a bank is not liable for funds dispensed to an improper party upon presentation of a passbook, assuming that the bank has exercised ordinary care. *Bulakowski v. Philadelphia Saving Fund Society*, 270 Pa. 538, 113 A. 553 (1921); *Burrill v. Dollar Savings Bank*, 92 Pa. 134 (1879).

In this instance, the person who presented the passbook, although undeniably a thief, was not an impostor. He was in fact the attorney retained to handle the estate, and he

presented the passbook in conjunction with a withdrawal slip properly signed by the depositor, the appellant himself.

Thus the appellee was also in compliance with Rule IV (2) of the Society which provides in pertinent part:

If a depositor be unable to attend in person to receive money, the sum may be withdrawn by power of attorney or order signed by the depositor and acknowledged when required, provided the deposit book ... is presented to ... the Society at the time of such withdrawal ... Appointments of attorneys in fact, withdrawals by attorneys in fact, and orders upon the Society for payments in withdrawal, can only be made in such form as may be approved by the Society.

■ Again, this comports with case law, which holds that bank rules may be waived by the bank itself, since they were made "for the convenience and the protection" of the *bank. In re Blose's Estate*, 374 Pa. 100, 97 A.2d 358 (1953).

Appellant stresses that the withdrawal slip requests the customer to sign in the presence of the teller, and he points to the wording that implies that a power of attorney may be a preferred proof of agency.

· However, the bank manager testified that the practice of the bank was to issue checks on an estate account on the authority of a withdrawal slip correctly signed by the depositor-administrator when presented by an attorney for the estate. (Deposition of September 8, 1977, 36–43). The teller similarly testified to bank procedure which accepted a properly executed withdrawal slip as an order and did not require the slip to be signed in the teller's presence. (N.T. April 14, 1980, at 35)

■ We conclude that neither case law nor the contract between the parties precluded appellant from releasing funds to an agent presenting a passbook and a properly signed withdrawal slip. The responsibility of a savings bank has been determined to be one of "ordinary care." *Bulakowski, supra.* Where the bank has complied with its own regulations, the burden is on the depositor to prove that the

bank was negligent. *Armstrong v. United States,* 171 F.Supp. 835 (E.D.Pa.1959) remanded on other grounds 283 F.2d 122 (CA 3 Pa. 1960); *Bulakowski, supra; Saji v. Philadelphia Saving Fund Society,* 112 Pa.Super. 149, 170 A. 334 (1934). The method appellee pursued was ordinarily prudent; it demanded two documents and checked the signature on one of them. These documents appeared to be, and were, genuine. Appellee declined to disburse any cash to an agent, and instead issued checks only. We find that its measure of care was at least "ordinary" and was not "negligent." Appellant has therefore not met his burden of proof, and the order of the lower court denying him relief was correct.

■ We now turn to appellant's argument that appellee is liable for the payment of $10,000 on the check made out to the estate and indorsed with a signature that was on its face inadequate. On cross-examination appellee's teller admitted that an indorsement containing merely the name of the estate and the name of the party presenting the check would not have been adequate to release funds under *appellee's* rules and regulations. He stressed, of course, that the check was *not* negotiated at appellee bank but at Industrial Valley, and declined to speculate on another bank's rules and customs of operation.

At this point, however, we must set aside all questions of comparative negligence and of discussion as to which of two innocent parties is the more culpable. A simple review of the relationship of the parties under the Uniform Commercial Code convinces us that the appellant must bear the brunt of the loss of the estate monies.[1] When the transactions surrounding the payment of the estate check are examined, it becomes obvious that the alleged fault of

---

1. The Uniform Commercial Code (UCC) was made a part of Pennsylvania law in 1953 and was amended by transfer of the text to the Consolidated Statutes without change of substance in 1979, Nov. 1, P.L. 255, No. 86 § 1, effective January 1, 1980. Therefore, this opinion will utilize the present citations to the Pennsylvania Consolidated Statutes Annotated, although the events that gave rise to the case took place in 1976.

honoring a defective indorsement is not one that may be lawfully laid upon a party in appellee's position. On this particular issue, appellant served the wrong bank as defendant.

Appellee bank was the drawer of the check for $10,000 made out to the estate. The drawer, under § 3413 of the UCC, makes the following contract and admissions:

(b) Contract of drawer.—The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any indorser who takes it up. The drawer may disclaim this liability by drawing without recourse.

(c) Admissions by maker, drawer or acceptor.—By making, drawing or accepting the party admits as against all subsequent parties including the drawer the existence of the payee and his then capacity to indorse.

Under the instant facts, of course, the draft was not dishonored but was paid by both the collecting bank (IVB) and the drawee (Fidelity). There was no "holder" or "indorser" left holding a check that could not be cashed; instead the money was released to the payee, the estate, which was then defrauded by its own agent. The drawer therefore did not become liable under its "contract" with a holder or indorser.

Turning to § 3413(c), *supra*, appellee is also free of "admissions" which would make it liable. Neither the "existence" of the payee estate nor the "capacity" of a proper agent to make a proper indorsement is at issue. The defalcating attorney signed only his own name, neglecting to put any indication of his agency on the indorsement. This was improper, but was certainly not a matter under appellee's control, as the UCC recognizes by having the drawer responsible only to admit "capacity" and "existence."

In short, the Code does not contemplate that a drawer shall be the insurer of the check it drafted once that check

has left its hands under a standard of ordinary care. A drawer cannot guarantee any agent's honesty.

■ It is arguable that Industrial Valley Bank, as the bank which served as the "collecting bank" by first honoring the check might have had a liability under Section 4207, which sets forth the collecting bank's warranties. The instant record does tend to prove that an improper indorsement was accepted by the only bank that was in a position to see the inconsistency. However, negligence under § 4207 does *not* apply to the *drawer*, and therefore *appellee* cannot be liable for the alleged fault of the collecting bank,[2] which is not a party to this action.

■ There is no question of agency between the two banks. Appellant was an ordinary customer maintaining a checking account at Fidelity, the drawee bank. Industrial Valley Bank, as collecting bank, was merely the bank of choice for the thief, and it became the collecting bank through happenstance. Neither IVB nor Fidelity was accountable to appellant as an agent acting in behalf of the appellee bank in the circumstances of this case.

The lower court was correct, therefore, in finding for the appellee and against the appellant on the above facts, and we affirm its decision. Denial of the exceptions at No. 1293 Philadelphia 1981, and judgment rendered at No. 2386 Philadelphia 1981 are affirmed.

Orders affirmed.

**2.** Under the UCC, the liability as between the payee and the collecting and/or drawee banks on these facts would appear to be a close decision. We need not speculate upon the outcome, but merely note the provision as follows:

**§ 3406. Negligence contributing to alteration or unauthorized signature**

Any person who by his negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting the ... lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the business of the drawee or payor.