433 A.2d 902

Ernest F. SARVER

v.

NORTH SIDE DEPOSIT BANK,

v.

Lorry A. SARVER, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 14, 1981.

Filed Aug. 14, 1981.

Linda C. Liechty, Pittsburgh, for appellant.

John Newborg, Pittsburgh, submitted a brief on behalf of North Side Deposit Bank, appellee.

John L. Bailey, Pittsburgh, for Ernest Sarver, appellee.

Before SPAETH, SHERTZ and MONTGOMERY, JJ.

SPAETH, Judge:

This appeal is from a judgment in an action in assumpsit that was tried without a jury. Since we cannot tell whether exceptions were timely filed, we shall reverse and remand for further proceedings.

The trial was on December 6, 1979. The opinion and finding of the lower court are dated December 28, 1979; the docket entries state that they were filed January 2, 1980. The docket entries further state that appellant filed exceptions on January 22, 1980. Appellee North Side Deposit Bank filed a motion to quash the exceptions (in which it is said that the exceptions were filed January 18, 1980) on the

ground that Pa.R.C.P. 1038(d) requires that exceptions be filed within ten days after notice of the decision. By order of April 7, 1980, the lower court denied the motion to quash the exceptions "since said Exceptions were filed within the period limited by Pa.R.C.P. § 1038(d)," and dismissed the exceptions as "being without legal merit." On May 7, 1980, a praecipe for final judgment was filed and this appeal was taken.

It is not apparent what the lower court meant by its statement that the exceptions "were filed within the period limited by Pa.R.C.P. § 1038(d)." Rule 1038(d) provides:

(d) Within ten (10) days after notice of the filing of the decision, exceptions may be filed by any party to the decision or any part thereof, to rulings on objections to evidence or to any other matters occurring during the trial. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to final judgment, leave is granted to file exceptions raising these matters. No motion for a new trial, for judgment non obstante veredicto, in arrest of judgment or to remove a nonsuit may be filed.

If the lower court meant, as it seems to have, that appellant was allowed, as of right, to file exceptions at the time she did, it may have been mistaken. The docket entries show that appellant's exceptions were not filed within ten days of the filing of the court's decision. These entries do not indicate, however, when appellant received notice of the filing of the court's decision.[1] It is therefore possible that appellant did file her exceptions within the required number of days. We cannot tell from a review of the record. Then too, appellant could, with leave of court, have filed exceptions more than ten days after receiving notice of the filing of the lower court's decision. Perhaps the lower court gave her leave, or intended to. Since the lower court did not

1. It is the responsibility of the prothonotary to notify "all the parties or their attorneys of the date of filing." Pa.R.Civ.P. 1038(c). We should expect, therefore, to find a docket entry for the date notice was given to appellant. However, there is no such entry.

provide us with an explanation of its decision, we are unable to determine the basis of the decision.

In these circumstances we have concluded that the most useful action we can take is to vacate the judgment and remand the case to the lower court with instructions to start all over. First the court should reconsider its ruling on the motion to quash the exceptions. If it finds that appellant filed her exceptions within ten days of receiving notice of the filing of its decision, the court should reinstate its order dismissing the exceptions and also reinstate its judgment. However, the court should state on the record the date such notice was given. If the exceptions were filed late, and no leave was granted to file them late, the court should quash the exceptions and reinstate the judgment, for appellant waived any error committed by the lower court by failing to file timely exceptions specifying the error. If leave was granted to file the exceptions late, the court should reinstate its order dismissing the exceptions and also, reinstate the judgment, accompanying these actions with an opinion explaining the reasons for dismissing the exceptions. Given the delay that has already occurred, we trust the lower court will accomplish the foregoing in the immediate future. Any new appeal must be taken from the judgment as reinstated.

Reversed and remanded for further proceedings consistent with this opinion.

SHERTZ, J., files a dissenting opinion.

SHERTZ, Judge, dissenting:

## I.

As the majority notes, the docket entries do not indicate when, or even whether, the Prothonotary complied with the notice requirements set forth in Pa.R.Civ.P. 1038(c).[1] Al-

1. Pa.R.Civ.P. 1038(c) states that:
   The decision may be made orally in open court at the end of the trial, and in that event shall be forthwith transcribed and filed in the office of the prothonotary, or it may be made thereafter in writing and filed forthwith. In either event *the prothonotary shall*

though such disregard of procedural requirements is not to be condoned, I believe that to remand, whereby the Prothonotary's dereliction is visited upon the parties, is neither necessary nor desirable.

If, in fact, the Prothonotary failed to give the 1038(c) notification, then Appellant's exceptions were not untimely. If, however, such notice was given, though not reflected in the docket entries, two possibilities exist: either Appellant filed her exceptions within ten days after receipt of notice, or she did not. If the former, then the trial court did not err in considering the exceptions on their merits. If the latter, then I would treat the trial court's statement that exceptions "were filed within the period limited by Pa.R.Civ.P. 1038(d)" as evidencing leave to file exceptions more than ten days after receipt of notice. Such a reading would "comport with the liberality of construction which should attend the Rules of Civil Procedure" and "be in keeping with the teaching of Pa.R.Civ.P. 248." *E. J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 614, 381 A.2d 441, 443 (1977).

In addition, it is to be noted that Appellee Bank has not asserted on appeal that the trial court's denial of its motion to quash the exceptions was error. This is quite understandable in view of the fact that no prejudice resulted from the trial court's consideration of possibly untimely exceptions inasmuch as the Bank prevailed on the merits, i. e. the trial court dismissed the exceptions.

Accordingly, I respectfully dissent from the majority's decision to remand. In my judgment, the better course is to address the merits of the case and thereby avoid further delay, unnecessary additional expense and the unavailing utilization of valuable and limited judicial resources.

## II.

In reaching a decision on the merits, I find no error in the trial court's conclusion that Appellee, North Side Deposit

> *notify all parties or their attorneys of the date of filing.* The trial judge shall render his decision within seven (7) days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity. (Emphasis added.)

Bank ("Bank") is entitled to restitution. Hence, I would affirm.

This case arises from the following facts. In April 1977 Appellant, Lorry A. Sarver, and her husband, Ernest F. Sarver, plaintiff below, opened a joint savings account at the Bank. On June 16, 1978, the couple separated, and on June 19, 1978, Mr. Sarver went to the Bank to make a withdrawal of $1,359.32, exactly one-half the balance then in the account. Mr. John Sakala, the branch manager, permitted Mr. Sarver to make the withdrawal, even though Mr. Sarver did not present the passbook, and Mr. Sarver immediately deposited the entire amount withdrawn in a newly opened account, which was in his name alone.[2]

Mrs. Sarver arrived at the Bank as Mr. Sarver was leaving, attempted to make a withdrawal at the drive-in window and was told by the teller that she would have to go inside to conduct the transaction. She did so, presented the passbook to a teller in the Bank, and was mistakenly permitted to withdraw the entire balance of the account as reflected in the passbook, i. e. $2,718.64.

Thus, the Bank paid out to Mr. and Mrs. Sarver one and one-half times the balance of their account. Upon learning of its error, the Bank took the funds from Mr. Sarver's newly opened individual account and applied them to cover the overpayment. Mr. Sarver was then advised that there were no funds in his separate account, and his passbook was marked "issued in error—void."

Mr. Sarver instituted suit against the Bank, and the Bank joined Mrs. Sarver as an additional Defendant. The trial court held for Mr. Sarver and against the Bank and for the Bank against Mrs. Sarver. This appeal by Mrs. Sarver followed.

On appeal, Mrs. Sarver contends that the relationship between a bank and a depositor is governed by an express contract, the terms of which are set out in the passbook.

2. It appears from a reading of the record that Mr. Sarver's withdrawal of one-half the balance of the joint account was prompted by his belief, which he communicated to Mr. Sakala, that Mrs. Sarver might attempt to withdraw the entire $2,718.64.

She is incorrect. The rules printed in a passbook are only for the convenience and protection of the bank and may be waived by it. *In re Blose's Estate*, 374 Pa. 100, 103, 97 A.2d 358, 359 (1953).

The relationship between a bank and a depositor is that of debtor and creditor. *Coffin v. Fidelity Philadelphia Trust Co.*, 374 Pa. 378, 97 A.2d 857 (1953). With respect to a general deposit account, the bank is the debtor of the depositor *to the amount of the balance in the account.* Moreover, under a theory of implied contract, the bank must repay *that amount* to the depositor on demand. 5A Michie on Banks and Banking § 1, at 11 (1973); *see Weiner v. Pennsylvania Co. for Insurance on Lives and Granting Annuities*, 160 Pa.Super. 320, 51 A.2d 385 (1947). However, once demand by the depositor and payment by the bank to the depositor are made, the contractual relationship ceases. 5A Michie on Banks and Banking § 9, at 35 (1973).

Appellee Bank did not breach its contract with Mr. and Mrs. Sarver by paying out one-half of the balance of the joint savings account to Mr. Sarver, without requiring that he present the passbook. Nor did the Bank act in a commercially unreasonable or negligent manner in doing so.

Following its payment to Mr. Sarver of $1,359.32, the Bank remained obligated to pay only the balance on deposit in the account on demand of Mr. or Mrs. Sarver. Thus, when Mrs. Sarver received $2,718.64, the amount that both the teller and Mrs. Sarver believed to be the correct balance, she received funds to which she was not entitled.

This case clearly falls within the Restatement of Restitution § 20 (1937), which states that:

A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess.

In the instant case, the Bank, in order to discharge its duty, was required to pay the balance of the savings account to

either Mr. or Mrs. Sarver on demand. To that end, both the Bank and Mrs. Sarver erroneously believed that the Bank was obliged to pay, and that Mrs. Sarver was entitled to receive, $2,718.64. Moreover, this belief was induced by a mistake of fact; that is, both the Bank[3] and Mrs. Sarver thought that the balance was $2,718.64. In fact, the balance then was $1,359.32, and the Bank was obligated to pay out only that amount. Thus, the Bank is entitled to restitution of the excess, and the trial court's order requiring Appellant, Lorry A. Sarver, to repay $1,359.32 to the Bank should be affirmed.

**3.** Ordinarily the knowledge of the branch manager, Mr. Sakala, that the balance was actually $1,359.32 would be binding on the Bank. *Restatement (Second) of Agency* § 268 (1958). However, *Restatement (Second) of Agency* § 278 (1958) states that:

The principal is affected by the knowledge which the agent has when acting for him or, if it is the duty of the agent to communicate the information and not otherwise to act, *the principal is affected after the lapse of such time as is reasonable for its communication.*

(Emphasis added).

In the instant case, Mr. and Mrs. Sarver made their respective withdrawals within a few minutes of each other. The trial court found that this fact caused the Bank mistakenly to overpay Mrs. Sarver. Implicit in the trial court's finding are the conclusions that sufficient time had not elapsed for Mr. Sakala reasonably to have communicated his knowledge and that Mr. Sakala's knowledge, therefore, is not imputable to the Bank.