Commonwealth of Pennsylvania, Department of General Services, Plaintiff *v.* Collingdale Millwork Company, Defendant.

Argued September 13, 1982, before President Judge CRUMLISH, JR. and Judges BLATT and MAC-PHAIL, sitting as a panel of three.

*Henry J. Costa, Jr.*, Assistant Counsel, with him *Thadeus A. Tanski*, Chief, General Litigation Unit, and *Anthony P. Krzywicki*, Chief Counsel, for plaintiff.

*Jeffrey L. Pettit*, with him *Alan V. Vaska, Hepburn, Willcox, Hamilton & Putnam*, for defendant.

OPINION BY JUDGE BLATT, January 21, 1983:

Before us is the motion of the Department of General Services (DGS) and also the cross-motion of Collingdale Millwork Company (Collingdale) for summary judgment.[1]

The stipulation of facts submitted by the parties reveals the following complicated chronology of

---

[1] Summary judgment may be entered when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Burd v. Department of Transportation*, 66 Pa. Commonwealth Ct. 129, 443 A.2d 1197 (1982).

events. The plaintiff, DGS, formerly the General State Authority, awarded a contract to Atoms Construction Corporation (Atoms) on July 25, 1974 for the performance of general construction in erecting a garage and maintenance building at Cheyney State College, Cheyney, Pennsylvania. On or about April 1, 1976, Atoms was declared in default of the aforesaid contract and completion of the contract was undertaken by Atoms' bonding company, United States Fidelity and Guaranty Company (USF&G). Unrelated to the Cheyney State contract, defendant Collingdale had supplied material to Atoms during the period of March 31 to April 14, 1975, for work being performed at the 12th Floor, Lewis Tower Building, Philadelphia, Pennsylvania. Atoms failed to pay Collingdale for such materials supplied and Collingdale consequently instituted an action in assumpsit against Atoms to collect the $2,391.51 unpaid balance plus tax and interest in the Court of Common Pleas of Philadelphia County. Collingdale obtained a judgment against Atoms in the sum of $2,788.63 which was soon docketed. Believing that the DGS held a sum of money payable to Atoms, it then filed in the aforesaid court of common pleas a praecipe for a writ of execution in attachment and summons against the DGS as a garnishee on July 21, 1976.

Collingdale then served interrogatories in attachment to DGS which the DGS answered. Subsequently Collingdale served supplemental interrogatories upon the DGS which were not answered. Collingdale's counsel and counsel for the DGS agreed that Collingdale would refrain from entering judgment against the DGS for failing to respond provided the payment of judgment against Atoms plus accrued interest was paid to Collingdale on or before January 15, 1979. Counsel for the DGS then advised Collingdale's coun-

sel that, of the $50,000 which had been set aside to be paid to Atoms, $3,000 would be held to satisfy Collingdale's judgment against Atoms. In furtherance of this conversation, counsel for the DGS instructed the comptroller's office to place a "hold" on the funds of Atoms, by reason of a claim by Collingdale, Atoms' subcontractor. On January 19, 1979, a different DGS attorney advised the comptroller's office that all funds due and owing under the contract between Atoms and the DGS were the property of USF&G, as completing surety, and, on the same day, the first-mentioned DGS counsel (the one who had dealt with Collingdale) informed Atoms by letter that the DGS intended to satisfy Collingdale's judgment against Atoms. On March 6, 1979, upon a praecipe filed by Collingdale, the prothonotary of Philadelphia County entered judgment against the DGS in the amount of $4,990.19, and, in response to a request by the DGS as to evidence of Collingdale's claim, Collingdale's counsel forwarded a copy of the docket entries to the counsel for the DGS. He also advised that judgment had been entered. The counsel for the DGS then directed the comptroller to issue a check to Collingdale from Atoms' account in the amount of $4,990.19. Subsequently, Collingdale's counsel sent a copy of the complaint to the comptroller of the DGS. On March 19, 1979, counsel for Collingdale forwarded the complaint, the judgment, and a copy of the January 19, 1979 letter (from the counsel for the DGS to Atoms) to counsel for USF&G. By letter dated March 21, 1979 counsel for USF&G then advised the counsel for the DGS that the funds which Collingdale sought were those of USF&G pursuant to its obligation to complete the Cheyney State contract as a surety for Atoms, and that Collingdale had not supplied

materials to Atoms at the Cheyney State project, and therefore, was not entitled to payment from USF&G funds. Nevertheless, a check dated March 29, 1979 was forwarded by counsel for the DGS in the amount of $4,990.19, payable to Collingdale, to Collingdale's counsel by certified mail on March 30, 1979. Counsel for the DGS then, by letter of April 17, 1979, advised counsel for Collingdale that the transmission of the check was in error because the funds owed to Atoms should have been paid to USF&G as completing surety and requested the return of the sum paid inasmuch as Collingdale had not supplied any materials to Atoms at the Cheyney State project. Neither Collingdale nor its counsel returned any sum of money to the DGS subsequent to the receipt of the April 17, 1979 letter. The DGS commenced this action to recover the funds paid to Collingdale by filing a complaint in assumpsit in this Court and has filed an amended complaint in equity.

The DGS in seeking restitution of the sum paid to Collingdale, argues first that the Court of Common Pleas of Philadelphia County lacked jurisdiction to enter a default judgment against them, that jurisdiction more properly rests with this Court in such a matter, and that, therefore, inasmuch as the judgment obtained by Collingdale had no legal effect and was unenforceable, the sum paid should be returned. Collingdale counters, however, that, because the court of common pleas had jurisdiction over Collingdale's claim against Atoms, it also had jurisdiction over all ancillary enforcement proceedings as specified in Pa. R.C.P. Nos. 3101-3260, and that the judgment against the DGS was consequently valid.

Our review of the case-law indicates that, in considering whether or not a state or local agency should be immune from attachment proceedings under the

doctrine of *custodia legis*,[2] it has been implicitly recognized that the court of common pleas has jurisdiction over such agencies for the purpose of ancillary attachment proceedings. *See Central Contracting Co. v. C. E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810 (1965); *Weicht; Buchholz; Wheatcroft.* This argument by the DGS must, therefore, fail.

The DGS next argues, however, that it is entitled to equitable relief: namely, the restitution of the sum paid to Collingdale. It claims that such payment was made pursuant to a mistaken factual belief that Collingdale was Atoms' subcontractor in the Cheyney State contract. Collingdale argues on the other hand

---

[2] The doctrine of *custodia legis*
generally provides that funds in the possession of the Commonwealth or one of its political subdivisions, owing to individuals, are not subject to attachment under the public policy that the government should be free from the annoyance and uncertainty arising out of disputes between the individuals to whom the money is owed and those claiming a right to the same funds by garnishment. Buckley v. Eckert, Id; Commonwealth v. Mooney, 172 Pa. Super. 30, 92 A.2d 258 (1952).
*Buchholz v. Cam*, 288 Pa. Superior Ct. 33, 36, 430 A.2d 1199, 1200 (1981). However, recognizing the "unfairness of the rule" in certain situations, *Wheatcroft v. Smith*, 239 Pa. Superior Ct. 27, 31, 362 A.2d 416, 418 (1976), courts have allowed exceptions to the doctrine "when the public purpose for which the funds were held has been achieved, and the money, or even property, merely awaits distribution to the judgment debtor, the policy underlying the doctrine of custodia legis is not frustrated by permitting garnishment." *Buchholz*, 288 Pa. Superior Ct. at 36, 430 A.2d at 1200. *See also Weicht v. Automobile Banking Corp.*, 354 Pa. 433, 47 A.2d 705 (1946); *Wheatcroft; Ostroff v. Yaslyk*, 204 Pa. Superior Ct. 66, 203 A.2d 347 (1964), *rev'd on other grounds*, 419 Pa. 183, 213 A.2d 272 (1965). Here, the facts as stipulated to by the parties, discloses that the public purpose for which the funds were held, *i.e.*, the Cheyney State construction, had been completed and the only step left was the distribution of the funds. We believe, therefore, that the doctrine of *custodia legis* should not apply here. *Buchholz*.

that such relief should not issue here because: it was entitled to receive the payment in satisfaction of the valid judgment against the DGS and therefore there was no requisite unjust enrichment; there was no mutual mistake of fact; and, in the alternative, because the stipulated facts show that the DGS knew before payment occurred that Collingdale was not a subcontractor on the Cheyney State contract.

For the DGS to recover the sum it paid to Collingdale, two elements of the remedy of restitution must be found to exist: (1) a requisite mistake, and (2) consequent unjust enrichment.[3] It is well-settled that equitable relief will generally not issue to correct a mistake of law but may issue to rectify a mistake of fact which has been defined by our Supreme Court as "any mistake except a mistake of law." *Betta v. Smith,* 368 Pa. 33, 36, 81 A.2d 538, 539 (1951) (adopting such definition from Section 7 of the Restatement of the Law of Restitution (1937)). Here the DGS alleges that, in making the payment to Collingdale, it had the mistaken factual belief that Collingdale was Atoms' subcontractor or completing surety in the Cheyney State project. Collingdale maintains, however, that such mistaken factual belief is not a "requisite mistake" in that it was a unilateral as opposed to a mutual mistake. We believe, however, that although it is true that a unilateral mistake *in the formation of a contract* will generally bar equitable relief requested by the party who has made the mistake, there is no contract here and therefore no contract bargain expectation of which Collingdale can be deprived. This preservation of the benefit of the bargain for the non-mistaken party is the pri-

---

[3] Dobbs, Remedies §11.7 (1973). *See* Restatement of the Law of Restitution §1; *National Maritime Union of America v. Paschaledes,* 192 Pa. Superior Ct. 362, 161 A.2d 646 (1960).

mary purpose of the rule for barring relief where a unilateral mistake occurs.[4] Thus, as in the situation where one party overpays another money,[5] a unilateral mistake of fact in and of itself will not bar restitution here.[6]

Turning to Collingdale's alternative argument that the DGS knew before payment occurred that Collingdale was not the subcontractor or completing surety on the Cheyney State contract, we believe this argument to maintain that there was in fact no mistake at all. The stipulation of facts entered into by the parties indicates that counsel for the USF&G, by letter dated March 21, 1979, advised counsel for the DGS that the funds which Collingdale sought were those of USF&G pursuant to its obligation to complete the Cheyney State contract as surety for Atoms, and that Collingdale had not supplied materials to Atoms at the Cheyney State project. Nevertheless, a check dated March 29, 1979 was forwarded by the said counsel for the DGS in the amount of $4,990.19, payable to Collingdale, to Collingdale's counsel by certified mail on March 30, 1979. This, we believe, suggests that there may not have been a mistake.

Even assuming arguendo, however, that a mistake of fact did occur, we believe that the DGS has failed to establish that Collingdale was not entitled to the funds and therefore unjustly enriched. The Restate-

---

[4] Dobbs, Remedies §11.7.

[5] *See, e.g.*, Dobbs, Remedies §11.7.

[6] Our Supreme Court in *Gilberton Fuels, Inc. v. Philadelphia & Reading Coal & Iron Co.*, 342 Pa. 192, 196, 20 A.2d 217, 219 (1941), stated that the

> [d]efendant has gone to some length to cite cases which show that the general rule in this state is, when one makes a payment under a mistaken of fact, he may recover back the amount of such payment. With this proposition we agree. . . .

statement of the Law of Restitution, §14(1) (1937), a treatise often cited[7] by the courts of this Commonwealth, provides as follows:

§14 DISCHARGE FOR VALUE

(1) A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

The rationale for this rule is that the judgment creditor who by definition has an entitlement, is a bona fide purchaser for value in giving up his claim and is therefore not unjustly enriched. *See* Dobbs, Remedies §4.7. Here, it is clear that Collingdale did have a valid judgment against DGS.[8] And our careful review of the record and stipulations in this matter indicates no misrepresentation by Collingdale nor does it show that it had notice that the DGS believed that it was the surety on the Cheyney State project. Rather, the record and the stipulations show that Collingdale, upon request of the DGS, sent a copy of its complaint in the court of common pleas to the DGS's comptroller's office and that paragraph three of the said complaint indicates that the materials sup-

---

[7] *See*, *e.g.*, *Yohe v. Yohe*, 466 Pa. 405, 353 A.2d 417 (1976); *Betta; Sarver v. North Side Deposit Bank*, 289 Pa. Superior Ct. 472, 433 A.2d 902 (1981); *Reiver v. Safeguard Precision Products, Inc.*, 240 Pa. Superior Ct. 572, 361 A.2d 371 (1976); *National Maritime Union of America*.

[8] "Money voluntarily paid to one *entitled* to receive it cannot be recovered back even though made under a mistake of fact." *T & L Leasing Corp. v. General Electric Credit Corp.*, 516 F. Supp. 1131, 1133, fn. 2 (E.D. Pa. 1981) (emphasis added).

plied to Atoms by Collingdale were for use at an office renovation project on the 12th floor of the Lewis Tower Building, Philadelphia, Pennsylvania.

Believing that this matter is controlled by Section 14 of the Restatement, that Collingdale is entitled to judgment as a matter of law, and that no genuine issue of material fact remained, we will therefore deny the DGS's motion for summary judgment and grant Collingdale's cross-motion.

## ORDER

AND Now, this 21st day of January, 1983, the motion of the plaintiff for summary judgment in the above-captioned matter is denied and the defendant's cross-motion for summary judgment is hereby granted.