NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4559
_____

CATAHAMA, LLC,

Appellant

v.

FIRST COMMONWEALTH BANK
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2:11-cv-00583)
District Judge: Honorable Terrence F. McVerry
_____

Submitted Under Third Circuit LAR 34.1(a)
October 28, 2014
_____

Before: MCKEE, *Chief Judge*, GREENAWAY, JR., and KRAUSE, *Circuit Judges*.


(Opinion Filed: February 13, 2015)
_____

OPINION*
_____

_____

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Catahama, LLC ("Catahama") appeals from the District Court's Memorandum Opinion and Order dated October 31, 2013, granting summary judgment to First Commonwealth Bank ("the Bank") against Catahama on all claims. Catahama argues that the District Court erred in granting the Bank summary judgment on Catahama's claims of unjust enrichment and promissory estoppel by, inter alia, misapplying the summary judgment standard, ignoring genuine disputes of material fact, and misapplying substantive law. There are no genuine disputes of material fact, and the District Court applied the appropriate standard of review and substantive law. We will affirm the District Court's judgment.

## I. Background

This appeal arises from a series of business transactions involving numerous parties and numerous financial agreements. In short, Catahama, Fresh Harvest River, LLC ("FHR"), and the Bank entered into a series of transactions related to the sale and operation of a manufacturing facility in Pennsylvania ("the Facility") owned by the Bank. The Bank leased the Facility and provided financing to FHR with the ultimate goal of selling the Facility to FHR outright. Catahama served as a factor to FHR when the Bank would no longer finance FHR's operation of the Facility. Ultimately, the sale to FHR was never consummated and FHR defaulted on the lease. Catahama sued the Bank seeking, inter alia, a declaration that it is entitled to FHR's accounts receivable ("A/R") generated as a result of Catahama's financing. The District Court ruled in the Bank's

2

favor on all counts.

## II. Facts

*The Bank and FHR*

In March 2009, Jack Gray formed FHR for the purpose of acquiring the Facility. FHR and the Bank entered into a Real Estate Lease (the "Lease") by which FHR leased the Facility. The agreement provided that the Lease would terminate on October 30, 2009, unless the parties entered a different agreement or closed on the sale of the entire premises by that date. The parties never entered into any agreement to extend the Lease beyond October 30, 2009. FHR, however, continued to occupy and operate the Facility without paying rent.

The Bank also approved two lines of credit for FHR. As collateral for the lines of credit, FHR entered into two security agreements by which it assigned and pledged to the Bank first lien position security interests in all of FHR's business assets, including A/R. The Bank perfected its security interests by filing UCC Financing Statements.

In August 2009, the parties entered into an agreement to sell the real estate of the Facility ("the Agreement of Sale"), but the sale was never consummated due to FHR's failure to make the $2,500,000 down payment. In January 2010, the Bank advised FHR that it was unwilling to loan additional funds under the credit lines.

*Catahama Invests in FHR*

In February 2010, FHR identified Catahama as a potential factor. Catahama alleges that it agreed to provide working capital and to fund customer orders for FHR

3

provided that Catahama would have a first lien collateral security position in, inter alia, receivables generated by Catahama's financing of those customer orders. According to Gray, David Hepler, Senior Vice President of the Bank, "assured [him] the Bank would not claim an interest in the receivables . . . funded by Catahama" (the "Forbearance Representation"). App. 505. Gray passed this message on to Herbert Feinberg, Catahama's principal. Subsequently, FHR borrowed $2,162,375.15 from Catahama.

It is undisputed that this alleged forbearance agreement was not in writing and that there were never any direct discussions between the Bank and Catahama regarding the negotiation of a lien subordination agreement. Hepler denies that he ever made such a representation.[1]

*The Bank Terminates the Agreements with FHR*

On May 6, 2010, the Bank sent FHR several letters providing "formal notice" that the Bank had elected to terminate the Agreement of Sale and the Lease. App. 272-76, 279-80 (the "May 6 Termination Letters"). The letters noted that FHR was past due on rent payments and in default on its lines of credit. The letters also asked FHR to contact either Hepler or Paul McGrath, the Banks's counsel, with any questions. A month later, the Bank advised FHR that it had agreed to sell the Facility to another party and demanded that FHR quit the premises by July 26, 2010.

*Catahama Wires $575,000 to the Bank*

On July 12, 2010, Catahama wired $575,000 to the Bank on behalf of FHR.

---

[1] Even if Hepler had made such a representation, Catahama cannot carry its burden of proving promissory estoppel under Pennsylvania law.

4

Catahama intended the payment to cure the default in rent payments claimed by the Bank in the May 6 Termination Letters. Before Catahama sent the wire, Jack Gray's assistant called the Bank and asked how FHR could make a payment on its "mortgage." App. 644. The Bank employee she spoke with could not locate a mortgage account, so she faxed a list of FHR's accounts at the Bank to FHR. However, neither Gray nor Feinberg could identify the appropriate account to which payment should be directed. Gray called the Bank and spoke with an unidentified Bank employee who told him to direct payment to an account ending in "99999." Neither Gray nor his assistant specifically mentioned Catahama, the $575,000 wire, the Real Estate Lease, or curing FHR's default in either of the phone calls.

Feinberg then instructed his bank (Deutsche Private Bank) to wire $575,000 from Catahama to the "99999" account at the Bank and to direct application of the payment to the "Open-End Mortgage, Security Agreement, and Fixture Filing dated August 31, 2009." App. 288. The wire was directed to Hepler's attention, but Hepler was on vacation when the wire was received. Bank personnel applied the payment to a commercial loan account ending in "00199" instead of the specified account ending in "99999." The two accounts, however, were related or "joint." App. 787. The "99999" account tracked the availability of a commercial line of credit and the "00199" account tracked the balance owed on that line of credit. The funds were not applied to the rental arrearages.

Shortly after the deposit, Catahama filed suit seeking, inter alia, return of the

5

$575,000, and a declaration that Catahama rather than the Bank was entitled to FHR's A/R. In its Amended Complaint, Catahama alleges (1) that the Bank will be unjustly enriched if it is permitted to retain the $575,000 wire payment, and (2) that under the doctrine of promissory estoppel, the Bank's promise to forbear its interest in FHR's A/R is enforceable. More important, Catahama is therefore entitled to the A/R.[2] On October 31, 2013, the District Court granted summary judgment against Catahama on these claims.

### III. Jurisdiction and Standard of Review

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

"We employ a plenary standard in reviewing orders entered on motions for summary judgment." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). "In considering an order entered on a motion for summary judgment, 'we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995)). "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) (citing *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002)). If the nonmoving party, however, "fails sufficiently to establish the existence of an essential element of its case

---

[2] On October 31, 2011, the District Court dismissed Catahama's third count, Erroneous Payment Order under the UCC.

6

on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt*, 767 F.3d at 265 (citing *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)). "Further, mere allegations are insufficient, and '[o]nly evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage.'" *Id.* (quoting *Lauren W.*, 480 F.3d at 266) (alterations in original).

## IV. Discussion

Catahama raises several issues[3] on appeal related to the District Court's grant of summary judgment against its claims of unjust enrichment and promissory estoppel.

### A. *Unjust Enrichment*

Catahama alleges that the Bank will be unjustly enriched if it is permitted to keep the $575,000 wire payment. According to the Amended Complaint, FHR specifically

---

[3]Catahama raises at least three new claims or arguments for the first time on appeal. Catahama argues: (1) that the Bank had "a duty of good faith and/or a fiduciary duty which it breached, when it came into possession . . . of the $575,000 and then applied those funds to satisfy its own interests," Appellant's Br. at 2; (2) that "Gray had apparent authority because in reality he was serving as an agent for both the Bank and Catahama," *id.* at 56; and (3) that the Bank will be unjustly enriched if permitted to keep the $575,000 wire transfer *and* collect FHR's A/R. *Id.* at 58. Catahama did not plead claims for breach of fiduciary duty / good faith or for unjust enrichment based on the Bank's retention of FHR's A/R in its Amended Complaint, and Catahama never argued before the District Court that Gray had apparent authority to bind the Bank. Catahama waived these claims and arguments by failing to raise them before the District Court; therefore, we do not consider them now. *See Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that 'arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances.'") (quoting *United States v. Petersen,* 622 F.3d 196, 202 n.4 (3d Cir. 2010)).

asked the Bank where funds should be directed to cure the rent arrearages, and the Bank identified a specific account. In light of this alleged fact, Catahama argues, the Bank either should have applied the wired funds against the arrearages or should not have accepted the wire. The District Court, however, concluded that there was no evidence in the record that Catahama was wrongfully induced by the Bank into making the payment. Catahama, therefore, had failed to make any showing that it would be "unjust" for the Bank to retain the funds, as required to prove unjust enrichment under Pennsylvania law.[4]

### 1.    Alleged Misapplication of the Summary Judgment Standard

On appeal, Catahama argues that the District Court misapplied the summary judgment standard by requiring Catahama to "prove" that the Bank was on notice that the $575,000 payment was intended for a specific purpose and by ignoring genuine disputes of material fact.

Catahama points to a single line in the District Court's opinion as evidence that the District Court "misapplied" the summary judgment standard: "Nor has Catahama *proven* that the Bank was on notice that the payment was intended [to cure the default]." App. 17 (emphasis added). Catahama, however, was not required to "prove" anything. As noted above, the District Court concluded that the record contained "no evidence" that

---

[4] "To prevail on an unjust enrichment claim in Pennsylvania, a plaintiff must demonstrate the following elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of such benefit under circumstances such that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citing *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).

the Bank had wrongfully induced payment.  App. 16.  Under Pennsylvania law, "'[t]he most significant element of the doctrine [of unjust enrichment] is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.'"  *EBC, Inc.*, 618 F.3d at 273 (quoting *AmeriPro Search, Inc.*, 787 A.2d at 991).  Instead, "'a claimant must show that the party against whom recovery is sought either *wrongfully secured* or *passively received* a benefit that . . . would be unconscionable for her to retain.'"  *Id.* (quoting *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008)) (emphasis added).

We agree with the District Court's assessment—there is no evidence in the record that the Bank induced payment or was aware of the purpose of the payment such that a reasonable factfinder could find that it would be "unjust" for the Bank to retain the funds. There is no evidence that anyone at the Bank asked for the $575,000 payment or represented to FHR or Catahama that such payment would cure FHR's default.  In fact, the Second Amendment to the Lease explicitly states the contrary: "the receipt of rent after default . . . shall not deprive Lessor of other actions against Tenant . . . Lessor may use the remedies herein given."  App. 152.  Both Feinberg and Gray admitted in deposition testimony that they did not contact McGrath or Hepler before sending the wire to alert them of its purpose or to seek instruction for how to effect payment in order to cure the default.  Gray specifically admitted that he "didn't say one word about the wire" during his phone call with the unknown bank employee regarding where to direct

9

payment. App. 107. Further, the transcript of the phone conversation between Gray's assistant and the Bank employee reveals that Gray's assistant never specifically mentioned the $575,000 wire, nor discussed FHR's default or how to cure it. Rather, the assistant asked about "mortgage" payments and knowingly accepted account information for FHR's "commercial loans" when no mortgage account could be located. App. 643-50.

Catahama's related contention that the Bank should have been on notice of Catahama's mistake because Catahama attempted to wire the funds to a "non-existent" account is similarly without merit.[5] Appellant's Br. at 21. The record evidence here demonstrates that Bank employees were not confused regarding how to apply the wire. Brenda Wainwright, a Bank manager, explained in her deposition that the account Catahama specified in the wire instructions was a "draw account" that tracked funds available for withdrawal and had no outstanding balance. App. 787-88. This draw account had a correlated (or "joint") account representing the balance owed on the draw account; any payment directed to the draw account would logically be applied to the balance owed on that account. *Id.* This testimony was corroborated by David Hepler, who agreed in his deposition that by looking at the wire instructions, he could "definitively know" for which account payment was intended. App. 710.

---

[5] Contrary to Catahama's contentions, the "99999" account identified in the wire was *not* a "non-existent" account. Rather, the account was labeled "expired," indicating no funds were available for withdrawal. App. 787.

Catahama offers no probative evidence to rebut this testimony. Instead, Catahama expects a jury to draw the inference that the Bank acted in bad faith simply because the Bank applied the wire payment to an account that was only nominally different from the one specified in the wire. Further, the self-serving allegations in the affidavits and declarations of Jack Gray and Herbert Feinberg simply do not raise a genuine dispute of material fact relating to whether the Bank's retention of the wired funds would be unjust. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) ("'[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'") (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)). Catahama, therefore, has failed to establish sufficiently the existence of an essential element of its unjust enrichment claim, and summary judgment is appropriate.

### 2. Alleged Misapplication of the Discharge for Value Rule

Catahama also argues on appeal that the District Court erred by allowing the Bank to assert the Discharge for Value defense as set forth in the Restatement of Restitution § 14(1). The Discharge for Value rule permits a creditor who receives payment from a third party by mistake to retain payment if it was accepted in good faith. *See* Restatement of Restitution § 14 (1937).[6] The District Court applied the rule in the Bank's favor in

---

[6] The Pennsylvania Supreme Court has not yet adopted the Discharge for Value rule. The Commonwealth Court, however, has adopted it. *See Commonwealth v. Collingdale Milwork Co.*, 454 A.2d 1176, 1180 (Pa. Commw. Ct. 1983). In such situations, "[t]he opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634,

light of its conclusion that "on this evidentiary record, the Bank made no misrepresentation to Catahama as to whether the money would cure the default" and "did not have notice of Catahama's alleged mistake." App. 16.

Catahama's argument that the Discharge for Value rule should not apply to permit the Bank to retain the $575,000 fails for reasons already discussed—the record contains no evidence that the Bank made any misrepresentations or had any notice of Catahama's mistake. The District Court properly applied the rule because "the transferee made no misrepresentations and did not have notice of the transferor's mistake." Restatement of Restitution § 14.

## B.    *Promissory Estoppel*

Catahama also alleges that the Bank, through David Hepler, represented that it would forbear from enforcing its security interest in any receivables generated by Catahama's financing. Catahama claims that it financed FHR in reliance on this Forbearance Representation. The District Court ruled that, even assuming the Bank had actually made the Forbearance Representation, given that (a) there were never any direct communications between Catahama and the Bank, and (b) the agreement was never memorialized in writing, Catahama could not carry its burden to establish that "injustice

---

637 (3d Cir. 2000) (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)). Given that the Pennsylvania Supreme Court has often "looked to the Restatement of Restitution as a source of authority in determining whether the retention of a particular benefit would be unjust," the District Court's use of the rule was proper. *Lucey v. Workmen's Comp. Appeal Bd.*, 732 A.2d 1201, 1204 (Pa. 1999) (citations omitted).

can be avoided only by enforcing the promise," as required to prove promissory estoppel under Pennsylvania law.[7]  App. 14-15.

On appeal, Catahama argues that the "District Court erred in not applying the principles of promissory estoppel."  Appellant's Br. at 49.  Essentially, Catahama argues that it had "a right to reasonably rely upon the communications and representations made by Hepler to and through Gray."  Appellant's Br. at 3.  Catahama argues that such reliance was particularly reasonable in light of the fact that the Bank did not attempt to collect the A/R for eight months after the alleged promise was made.

We agree with the District Court, however, that even when the record is viewed in the light most favorable to Catahama, the Bank is entitled to summary judgment.  To the extent Catahama, a sophisticated investor,[8] relied on an alleged oral promise made to an intermediary and failed to take efforts to protect itself in writing or to talk directly to the Bank, such reliance was unreasonable and enforcement of the alleged promise is not necessary to avoid injustice.  *See Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 160 (Pa. 1994) ("[S]atisfaction of [the injustice]

---

[7] "To establish a promissory estoppel claim under Pennsylvania law, the plaintiff must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise."  *Luther v. Kia Motors Am., Inc.*, 676 F. Supp. 2d 408, 421 (W.D. Pa. 2009) (citing *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000)).

[8] The degree of sophistication of the parties is a relevant factor in ascertaining the reasonableness of reliance.  *Greenberg v. Tomlin*, 816 F. Supp. 1039, 1056 (E.D. Pa. 1993).

requirement may depend on the reasonableness of the promisee's reliance, . . . on the formality with which the promise is made, [and] on the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise . . . .") (quoting Restatement (Second) of Contracts § 90(1) (1981)).

Based on record evidence, Catahama has made no showing that the enforcement of the Bank's alleged promise to forbear its interest in the A/R is necessary to avoid injustice. Even assuming that Hepler made such a representation to Jack Gray (which he denies), there is no evidence that Catahama ever confirmed the agreement directly with Hepler or memorialized the agreement in writing, as acknowledged by Feinberg in his deposition and Catahama in its discovery responses. In fact, Catahama's financing agreement with FHR expressly assigned to Catahama as security all outstanding shares of FHR, but was silent as to any security interest in A/R or the Bank's assent to such an arrangement. Catahama's failure to secure its alleged interest in writing is particularly unreasonable given that the Bank had an express (and perfected) security interest in FHR's A/R pursuant to two security agreements. *See Luther,* 676 F. Supp. 2d at 423 (granting summary judgment against a plaintiff asserting promissory estoppel because it was unreasonable as a matter of law for "'experienced business people to make business decisions based on oral representations in contravention of written statements'") (quoting *Blue Mt. Mushroom Co. v. Monterey Mushroom*, 246 F. Supp. 2d 394, 406 (E.D. Pa. 2005)).

14

The sole fact that the Bank waited several months before attempting to enforce its security interest in the A/R cannot outweigh the overwhelming evidence that Catahama acted unreasonably in this situation.

Considering all of the record evidence, no reasonable factfinder could find that enforcement of the Bank's alleged forbearance representation is necessary to avoid injustice, as required to prove promissory estoppel under Pennsylvania law. Summary judgment on this claim is appropriate.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.